640 So.2d 208 (1994)
Paula P. BRECKENRIDGE, Appellant,
v.
Alvin Wwayne FARBER, Appellee.
No. 93-0874.
District Court of Appeal of Florida, Fourth District.
August 3, 1994.
*209 Bennett S. Cohn, Law Office of Bennett S. Cohn, West Palm Beach, for appellant.
John T. Milton, Palm Beach, and John P. Stetson of Law Office of John P. Stetson, West Palm Beach, for appellee.
PARIENTE, Judge.
Appellant, Paula P. Breckenridge (investor), seeks review of an order granting appellee's, Alvin W. Farber's (broker's), motion to compel arbitration. The investor contends the trial court erred in granting the motion because the broker, having knowledge of his right to arbitration, failed to timely assert the right and actively participated in litigation thereby waiving his right. We agree and reverse.
On December 13, 1985, the investor opened a stock brokerage account with Thomson McKinnon Securities, Inc. (Thomson McKinnon) through the broker. The documents the broker presented to the investor to sign in order to open the account included a management agreement and signature card containing an arbitration clause which reads as follows:
It is agreed that any dispute, claim or controversy between us and your firm which does not arise out of the federal securities law shall be resolved by arbitration under the Constitution and Rules of the New York Stock exchange, Inc., or under the Code of Arbitration Procedure of the National Association of Securities Dealers, Inc., at ____ election. Disputes, claims or controversies arising under the federal securities laws may, at our election, be resolved either by arbitration or through litigation in the Courts.
The broker signed the investor's new accounts form.
In October 1990, the investor filed a complaint against the broker for damages sustained alleging common law claims of negligence and fraudulent misrepresentation and violations of both state and federal securities law arising from the manner in which her funds were invested. Litigation between the investor and the broker actively ensued for two and one-half years  from October 1990 through February 1993. During this time, *210 the broker filed motions to dismiss the investor's complaint and three amended complaints, none of which asserted arbitration as grounds for dismissal. In his answer to the investor's third amended complaint, the broker asserted affirmative defenses. Again a right to arbitration was not raised. Thereafter, the parties proceeded with discovery, including interrogatories and document production.
Early in 1992, the trial court set the case for trial for October of that year and simultaneously directed mediation. The broker failed to participate in mediation. He was sanctioned by the trial court and compelled to comply.
In July 1992, the broker, through his attorney, sent a letter to Thomson McKinnon, which was in bankruptcy, requesting a copy of the documents executed between Thomson McKinnon and the investor. The attorney stated an interest in obtaining the documents "as soon as possible to determine if this matter should be properly heard in binding arbitration." In response, Thomson McKinnon forwarded the broker a poor quality microfilmed copy of the management agreement, signature card and new accounts form.
The first scheduled trial for October 1992 was continued upon the broker's motion and reset for February 1993. Thereafter, having failed to answer the investor's interrogatories, the broker was ordered to comply or have his answer stricken.
By November 1992, the investor succeeded in striking all of the broker's expert witnesses. At the same time, the broker's successor attorney obtained a second, similarly poor copy of the agreement, signature card and new accounts form. Several days later, the broker, through his new attorney, filed a motion to dismiss and motion for summary judgment. Again, neither motion was based on a right to arbitration. Both motions were denied.
In January 1993, having received adverse rulings on all motions which could have disposed of the case and faced with the prospect of proceeding to trial without any expert witnesses, the broker's attorney "succeeded" in reading the signature card, which he stated could only be done with the aid of a magnifying glass, and "discovered" the arbitration clause. Based on the clause, the broker filed a motion for arbitration which the trial court granted. The granting of this motion is the subject of this appeal.
There is no dispute between the parties that though a non-signatory to the signature card, the broker is a beneficiary of the arbitration clause either by virtue of his third party beneficiary status or his then-existing employee-employer relationship with Thomson McKinnon. See Stratton Oakmont, Inc. v. Goldstein, 615 So.2d 183 (Fla. 3d DCA 1993); Zac Smith & Co. v. Moonspinner Condo. Ass'n, 472 So.2d 1324 (Fla. 1st DCA 1985); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Melamed, 453 So.2d 858 (Fla. 4th DCA 1984). Thus, as the broker may enforce the rights of the signature card, so may the obligations attached to these rights be enforced against him.
We start with the general proposition that all doubts about the scope of an arbitration agreement, as well as any questions about waivers thereof, are in favor of arbitration, rather than against it. Ronbeck Constr. Co. v. Savanna Club Corp., 592 So.2d 344, 346 (Fla. 4th DCA 1992). This is consistent with the policy of the federal courts in construing arbitration provisions liberally in favor of arbitration under the United States Arbitration Act, 9 U.S.C. sections 1-14 (1982). Ronbeck; see Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).
While arbitration agreements are favored, a party may waive that right if the party has knowledge of the right yet takes actions inconsistent with the right. See, e.g., Mike Bradford & Co. v. Gulf States Steel Co., 184 So.2d 911, 913 (Fla. 3d DCA 1966). This rule has been consistently followed in this state. See, e.g., Klosters Rederi A/S v. Arison Shipping Co., 280 So.2d 678 (Fla. 1973), cert. denied, 414 U.S. 1131, 94 S.Ct. 869, 38 L.Ed.2d 755 (1974); Finn v. Prudential-Bache Secs., Inc., 523 So.2d 617, 618 (Fla. 4th DCA), rev. denied, 531 So.2d 1354 (Fla.), cert. denied, 488 U.S. 917, 109 S.Ct. 274, 102 L.Ed.2d 262 (1988); King v. Thompson & *211 McKinnon, Auchincloss, Kohlmeyer, Inc., 352 So.2d 1235 (Fla. 4th DCA 1977); Ojus Indus. v. Mann, 221 So.2d 780, 782 (Fla. 3d DCA 1969).
Under Bradford and its progeny, a two-prong inquiry is appropriate. A party claiming waiver of arbitration must demonstrate: 1) knowledge of an existing right to arbitrate and 2) active participation in litigation or other acts inconsistent with the right. Bradford, 184 So.2d at 915. A showing of prejudice is not required if waiver is based on inconsistent acts rather than delay in asserting one's right. Finn. It is the knowledge requirement which must be addressed first, and which is the crux of the appeal.
The broker claims he did not have actual knowledge of the arbitration clause until his attorney discovered it through a magnifying glass in January 1993, one month before the scheduled trial. Apparently the broker expects us to overlook the fact that he had the signature card in hand in July 1992, at which time his attorney was questioning the possibility of arbitration. We find that receipt of the signature card, though difficult to decipher, created a means by which the broker had actual knowledge of the arbitration clause. This knowledge, coupled with his failure to have timely asserted the right and continued participation in litigation, effectively waived his right to arbitration.
We find support for our finding from the holding in a case previously before this court, Marthame Sanders & Co. v. 400 West Madison Corp., 401 So.2d 1145 (Fla. 4th DCA 1981). In Marthame, we found the plaintiffs (investors) waived their right to arbitration because they were presumed to have knowledge of the arbitration clause contained in documents which were referenced in the brokerage agreement they signed. Id. This court stated:
[Plaintiffs/Investors] acknowledged, by initial, the general conditions pertaining to the construction contract. The general conditions contained the provision for arbitration. The [plaintiffs/investors] must be assumed to have known, and are charged with the knowledge, of the provisions incorporated into the contract they executed.
Id. at 1146.
Likewise, as a beneficiary of the arbitration clause, we charge the broker with knowledge of the documents he presented to the investor and from which he now seeks to benefit. This includes the signature card containing the arbitration clause.
We are unwilling to accept the broker's argument that he was without knowledge due to the fact that he received a poor copy of his employer's signature card which was difficult to decipher. Beyond the fact that he had an actual copy of the agreement for several months, the broker, who claims ignorance, admits to being a securities salesman registered with the State of Florida, Department of Banking and Finance, Division of Securities and with the Securities and Exchange Commission (SEC), National Association of Securities Dealers (NASD) and/or the New York Stock Exchange (NYSE). Arbitration clauses are standard in most, if not all, standard brokerage agreements. Both the NASD and the NYSE, with the approval of the SEC, have adopted rules concerning requirements for pre-dispute arbitration agreements. These rules require that in presenting an arbitration clause to a customer, the clause, inter alia, must be highlighted and contain disclosure language stating that arbitration is final and that the parties waive their right to a judicial remedy. These rules further require that the clause be referenced by the customer's signature line and acknowledged. See Code of Arbitration Procedure, NASD Manual (CCH) p2,171(f)(1) (1984); article III, section 21(f)(1) of the NASD Rules of Fair Practice.
It is difficult to understand how the broker can profess ignorance of a clause which he is charged with fully and fairly disclosing to his customers. Based on the security industry's strict requirements, the universal usage of the clauses and the boilerplate language, it is inconceivable that as a stockbroker working for a major brokerage firm, the broker would not have known about the clause from the time he opened the account for his investor.
However, we need not reach the question of whether constructive knowledge, rather *212 than actual knowledge, will support a finding of waiver. In this case, the record is uncontradicted that the broker had in hand no later than July 1992 the very document which contained the clause. The reason the broker's attorney obtained the management agreement, signature card and new accounts form was to determine "as soon as possible" if the matter "should be properly heard in binding arbitration." We also take note of the fact that the microfilmed copy of the arbitration clause which is in the record before us, while difficult to decipher, is not actually illegible.
We find the broker's professed "Sherlock Holmes" effort in suddenly being able to read the clause in January 1993 to be nothing more than an attempt to avoid the failure to look carefully at the document when it came into his attorney's actual possession in July 1992. Marthame. Only at the eleventh hour, having exhausted all possible motions to dispose of the case and without any experts, did the broker assert the right to arbitration. Scrutinizing his actions under the same magnifying glass he professes to have used to discover the arbitration clause, our eyes cannot avoid the glaring rhetorical question that if the clause was discernible in January 1993, why not in July 1992?
As to the second requirement, a party's waiver of a contractual right to arbitration can be found by active participation in a lawsuit or by taking action inconsistent with the right. Klosters; Finn. Repudiation of an arbitration clause by a defendant, in the form of an answer to the complaint without demand for arbitration constitutes an abandonment of the right to arbitration. See King, 352 So.2d at 1235; Ojus Indus., 221 So.2d at 782. Here, the facts are clear that in filing his motions to dismiss, answer and affirmative defenses, the broker did not raise the issue of arbitration. Additionally, the facts indicate the broker participated in protracted litigation by filing pleadings, motions, and eventually a motion for summary judgment.
Arbitration is intended as a costeffective substitute forum for court, not as an "afterthought" or a "last-ditch" effort. To allow arbitration to proceed after two and one-half years of vigorous litigation and discovery would, in effect, give brokers and brokerage firms a "windfall." Not only would they be given the opportunity to attempt to "wear down" the plaintiff in litigation, but when that failed, they could move for arbitration under the guise of "lack of knowledge."
Accordingly we reverse the trial court's order compelling arbitration and remand this case for trial.
REVERSED AND REMANDED.
GUNTHER and POLEN, JJ., concur.