790 So.2d 461 (2001)
Matthias RATH, M.D. and Health Now, Inc., Appellants,
v.
NETWORK MARKETING, L.C., n/k/a Rexall Showcase International, Inc., Appellee.
No. 4D00-1276.
District Court of Appeal of Florida, Fourth District.
May 16, 2001.
Rehearing Denied August 14, 2001.
*462 Richard J. Ovelmen, Landon K. Clayman and Enrique D. Arana of Jorden Burt Boros Cicchetti Berenson & Johnson LLP, Miami, and Lisa S. Small and Michael B. Small of Small & Small, P.A., Palm Beach, for appellants.
Mark F. Bideau, Lori Gleim and Janet Bernstein Teebagy of Greenberg Traurig, P.A., West Palm Beach, for appellee.
STEVENSON, J.
Matthias Rath, M.D. and Health Now, Inc. (collectively "Rath") appeal from a non-final order, holding that Network Marketing, L.C., n/k/a Rexall Showcase International, Inc. ("Rexall") did not waive its right to arbitrate. We agree with Rath and reverse.
Rexall markets health and wellness products. Rath represents himself as the scientist who developed the world's first patented therapy for the natural reversal of cardiovascular disease. In August 1994, the parties entered into a written agreement whereby Rath agreed, in return for royalties, to assist Rexall in developing products and formulas for vitamins and dietary and nutritional supplements, to serve as Rexall's spokesperson, and to develop marketing materials. The agreement contained a non-compete clause, a confidentiality provision, and an arbitration provision. The latter provision provided:
All disputes arising out of or under this agreement shall be submitted to the American Arbitration Association (AAA).... Such determination of the AAA shall be enforceable through collateral proceedings to enforce arbitration awards in the state courts of Florida which shall have the authority to enjoin any violation of this agreement.
In September 1996, Rexall filed a statement of claim with the AAA in Miami, seeking a hearing in West Palm Beach. Rexall alleged (1) that Rath violated the agreement by utilizing trade secrets and confidential information in the form of Rexall's customer lists to directly contact Rexall distributors and customers for purposes of persuading them to become defendants' customers; (2) that Rath libeled and slandered Rexall to distributors and customers; and (3) that Rath refused to provide clinical study data as required by the agreement while appropriating such study results for its own purposes. Rexall sought temporary and permanent injunctive relief based on Rath's alleged breaches of the parties' agreement.
Rexall also filed an action in the circuit court in Palm Beach County, seeking emergency temporary injunctive relief pending a determination in arbitration of the issues set forth in its statement of claim filed with the AAA. Through the motion for injunctive relief, Rexall sought to restrain Rath from using or disclosing confidential or proprietary information relating *463 to Rexall's business. Rexall also sought the return of all originals and copies of any confidential information relating to Rexall's product or formula or identifying Rexall's customers' ordering requirements. Of import, Rexall sought to restrain Rath from relying on the clinical study results on Rexall's products. It alleged that, but for the issuance of the immediate injunction, Rath's wrongful conduct would cause irreparable damage and harm to Rexall before arbitration could be conducted.
On September 17, 1996, the trial court granted the temporary injunction and ordered Rath to return to Rexall the clinical study documents. Rath did not appeal from the order granting injunction. On October 17, 1996, Rexall moved for a contempt order, arguing that Rath failed to return the confidential documents as referenced under the relevant section of the order granting temporary injunction. The trial court conducted a hearing and thereafter found Rath in contempt. Rath appealed to this court on these contempt and injunctive issues, and this court affirmed. See Rath v. Network Mktg., L.C., 702 So.2d 506 (Fla. 4th DCA 1997); Rath v. Network Mktg., L.C., 698 So.2d 941 (Fla. 4th DCA 1997).
In May 1999, Rexall moved to amend its complaint in the trial court to add counts alleging defamation and tortious interference with business relationships by Rath. The trial court denied the motion.
Rexall then filed a separate action in state court alleging these claims. Rath removed the case to federal court, which dismissed the case. Rexall did not pursue an appeal from that order.
Rath finally moved the circuit court for a partial summary judgment that Rexall had waived its right to arbitration. Rath argued that Rexall waived its right by, among other reasons, seeking and obtaining affirmative injunctive relief in the circuit court. The court denied the motion. This appeal followed.
We begin our discussion with the general principle that all doubts regarding the scope of an arbitration agreement, as well as any questions about waivers thereof, should be construed in favor of arbitration rather than against it. See Breckenridge v. Farber, 640 So.2d 208, 210 (Fla. 4th DCA 1994). Nevertheless, a party may waive his contractual right to arbitration by actively participating in a lawsuit or by taking action inconsistent with that right. See Finn v. Prudential-Bache Sec., Inc., 523 So.2d 617, 618 (Fla. 4th DCA), rev. denied, 531 So.2d 1354 (Fla.1988). Overall, "[a] party claiming waiver of arbitration must demonstrate: 1) knowledge of an existing right to arbitrate and 2) active participation in litigation or other acts inconsistent with the right." Breckenridge, 640 So.2d at 211.
Rath, citing to Romar Transports, Ltd., Inc. v. Iron & Steel Co. of Trinidad & Tobago, Ltd., 386 So.2d 572 (Fla. 4th DCA 1980), argues that Rexall waived its right by seeking and obtaining temporary injunctive relief in circuit court. In Romar, the parties entered into a contract involving the receiving, inspection, documentation, warehousing, loading, ocean freight and offloading of respondent's cargo. The contract contained an arbitration clause, which provided:
If any questions, difference, controversy, disagreement or dispute shall arise between the parties or with respect to the interpretation construction or application of any clause or term in this Contract concerning the rights, duties, or liabilities of the parties, under this Contract or in any other way touching or arising out of this Contract the same shall be referred to the determination of *464 two arbitrators, one to be appointed by each party to the dispute and an umpire to be appointed by the two arbitrators. The proceedings shall be in accordance with the Arbitration Ordinance of Trinidad and Tobago, Chapter 7, No. 1, or any statutory reenactment or modification thereof for the time being in force.
Id. at 573.
The petitioners later sued the respondent for breach of contract and for the reasonable value of services performed. The respondent filed no answer to the complaint and undertook no discovery, but did file a counterclaim to recover property held by the petitioners. The respondent sought to avoid waiver by asserting, "By the filing of this Counter Claim said Counter Plaintiff does not waive nor relinquish any rights which it has to arbitration and this Counter Claim is being filed solely for the purpose of obtaining possession of the property referred to." Id. Based on the counterclaim, the trial court issued an order to show cause and an order directing the clerk to issue a writ of replevin. The writ was issued and the property was delivered to the respondent. Thereafter, the respondent filed a motion to stay proceedings pending arbitration and/or to dismiss the complaint based on the mandatory arbitration clause in the parties' contract. The court stayed the proceedings pending arbitration.
On a petition for writ of certiorari from this latter order, the petitioners argued that the respondent waived any right of arbitration by filing its counterclaim. This court agreed, and held that the subject of respondent's counterclaim fell within the mandatory arbitration provision of the parties' agreement. See id. at 573-74. In further support of its ruling, this court emphasized the "substantial affirmative relief' the respondent had obtained based on its counterclaim. Id. at 574.
Rexall discounts Romar and, instead, cites to a host of federal court opinions determining that section 3 of the Federal Arbitration Act[1] does not preclude district courts from granting interim injunctive relief in an arbitrable dispute, provided the court properly exercises its discretion in issuing the relief.[2] These courts have reasoned that the legislature's intent to enforce arbitration agreements "would frequently be frustrated if the courts were precluded from issuing preliminary injunctive relief to preserve the status quo pending arbitration and, ipso facto, the meaningfulness of the arbitration process." Teradyne, Inc. v. Mostek Corp., 797 F.2d 43, 51 (1st Cir.1986); accord Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley, 756 F.2d 1048, 1052-54 (4th Cir. 1985); Roso-Lino Beverage Distribs., Inc. v. Coca-Cola Bottling Co. of N.Y., Inc., 749 F.2d 124, 125 (2d Cir.1984); Sauer-Getriebe *465 KG v. White Hydraulics, Inc., 715 F.2d 348, 351-52 (7th Cir.1983).
Other courts, however, have taken the view that, absent contractual language in the arbitration agreement providing for such relief, granting preliminary injunctive relief in an arbitration proceeding runs counter to the "`unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts.'" Merrill Lynch, Pierce, Fenner & Smith v. Hovey, 726 F.2d 1286, 1292 (8th Cir.1984) (quoting Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967))[3]; see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Thompson, 575 F.Supp. 978, 979 (N.D.Fla.1983) (finding that 9 U.S.C. § 3 "prohibits evidentiary proceedings that would be required before this court could consider any preliminary injunction," and reasoning that such relief if granted "would frustrate the statutory policy of enforcing arbitration agreements and of moving the parties into arbitration as quickly as possible"). The common theme of all these cases is that district courts may grant interim injunctive relief pending arbitration in order to preserve the status quo, but only if the parties' agreements contemplate such relief. See, e.g., Am. Express Fin. Advisors, Inc. v. Makarewicz, 122 F.3d 936, 940 (11th Cir.1997) (reversing denial of injunctive relief to preserve the status quo pending arbitration where arbitration agreement provided for such relief); accord RGI, Inc. v. Tucker & Assocs., Inc., 858 F.2d 227, 230 (5th Cir. 1988); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dutton, 844 F.2d 726, 727 (10th Cir.1988); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Shubert, 577 F.Supp. 406, 407 (M.D.Fla.1983); Erving v. Virginia Squires Basketball Club, 468 F.2d 1064 (2d Cir.1972). The rationale lies in general contract principles, i.e., that where parties bargain for and/or contemplate exceptions to arbitration in their contracts, their intentions should control. See RGI, 858 F.2d at 230.
Only two Florida state court decisions have discussed the propriety of issuing injunctive relief pending arbitration. In Korn v. Ambassador Homes, Inc., 546 So.2d 756 (Fla. 3d DCA 1989), a per curiam decision, the Third District, citing to Teradyne, supra, affirmed two non-final orders which granted a temporary injunction pending arbitration on a constructive trust claim, and refused to dissolve the injunction. The court held that because all the elements necessary for a temporary injunction, including irreparable harm and no adequate remedy at law, were shown, a temporary injunction was proper to maintain the status quo pending the outcome of the arbitration claim. See id. at 757. The opinion, however, made no mention of there having been any sort of agreement between the parties.
The other Florida case, EMSA Ltd. Partnership v. Mason, 677 So.2d 105 (Fla. 4th DCA 1996), involved a dispute between an employer and employee over a covenant not to compete. Their agreement included a provision that "any and all disputes" would be submitted to arbitration, but also included an exception that "EMSA could seek equitable relief to enforce the covenant not to compete." Id. at 106 n. 1. Without resorting to arbitration, the employer filed suit to enjoin a breach of the covenant not to compete, and the employee counterclaimed for damages. After the *466 employer dropped its injunction claim, it moved to dismiss the damages action on the grounds that the exclusive remedy was through arbitration. The trial court denied the motion. On appeal, this court held that the dispute was covered by the arbitration agreement. Although this case is not factually on point, this court did hold that, in view of public policy principles, all questions concerning the scope or waiver of the right to arbitrate should be resolved in favor of arbitration rather than against it. See id. at 107.
Notwithstanding the persuasive reasoning in Teradyne and its progeny, we agree with Rath that we are bound by our prior decision in Romar. As in Romar, but unlike EMSA, the parties' agreement in the instant case did not contemplate the issuance of interim relief by the circuit court pending the outcome of arbitration. Rather, it contemplated the issuance of such relief only "through collateral proceedings to enforce arbitration awards in the state courts of Florida which shall have the authority to enjoin any violation of this agreement." We interpret this language to mean that either party could seek such relief in the circuit court, but only after a determination on the merits of the underlying dispute by the arbitrator. If the parties had intended that the agreement authorize interim injunctive relief pending arbitration to preserve the status quo, they should have put such language in the agreement.[4]
Moreover, even if we were to recede from Romar to follow the logic of Teradyne, we would still reverse. The trial court's order required Dr. Rath to turn over to Rexall the results of clinical studies which Dr. Rath himself had conducted, the ownership of which was the subject of intense dispute between the parties. By seeking and obtaining the substantial affirmative relief requested here, Rexall upset rather than preserved the status quo. Under either rationale, we hold Rexall waived its right to arbitrate.
Our reversal on this issue moots our need to address the other issues on appeal.
REVERSED and REMANDED for further proceedings in accordance with this opinion.
WARNER, C.J., and POLEN, J., concur.
NOTES
[1] 9 U.S.C. § 3 provides:

Stay of proceedings where issue therein referable to arbitration
If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.
[2] "A party seeking an injunction ... must demonstrate: 1) irreparable harm; 2) a clear legal right; 3) an inadequate remedy at law; 4) consideration of the public interest." Hiles v. Auto Bahn Fed'n, Inc., 498 So.2d 997, 998 (Fla. 4th DCA 1986).
[3] Two months after Hovey was decided, however, another Eighth Circuit panel affirmed the issuance of a preliminary injunction in an arbitrable dispute. See Ferry-Morse Seed Co. v. Food Corn, Inc., 729 F.2d 589 (8th Cir. 1984).
[4] Because there ostensibly was no agreement between the parties involved, we believe Korn is factually inapposite. Thus, we need not certify conflict even though the Third District relied on Teradyne to reach the opposite conclusion than we do here.