**GETZ RECYCLING, INC., Appellant,**

v.

**Loren L. WATTS, et al., Respondent.**

**No. WD 59717.**

Missouri Court of Appeals,
Western District.

March 26, 2002.

Ralph A. Monaco, II, Esq., Kansas City, for Respondent.

Thomas M. Franklin, Esq., Kansas City, for Appellant.

Before SMART, P.J., LOWENSTEIN and ELLIS, JJ.

HAROLD L. LOWENSTEIN, Judge.

This appeal involves the applicability of an arbitration clause to a suit and counter-suit concerning disputes over the lease of heavy construction equipment. The questions are: 1) whether the disputes are within the scope of an arbitration clause, and 2) whether the agreement to arbitrate has been waived.

### Factual and Procedural History

Loren and Gary Watts, the plaintiffs-respondents, own a rock-crushing business called Rock Ledge (hereafter "Loren Watts," "Gary Watts" or "Rock Ledge") in Jackson County, Missouri.

On September 8 and 9, 1999, Loren Watts traveled to Phoenix, Arizona, and met with representatives of plaintiff-appellant Getz Recycling, an Arizona corporation. Loren Watts signed an Equipment Rental Agreement and paid a security deposit on a rock-crushing machine (called a "Rubble Hog") after having observed the machine operate.

The rental agreement contained the following arbitration clause:

> In the event of any dispute as to the terms and/or conditions as set forth in the agreement, arbitration is to be conducted under the rule of the American Arbitration Association in Phoenix Arizona at a time and location to be specified by GETZ RECYCLE, INC. or its authorized representative.

The lease agreement also called for the Wattses to bring the machine to their place of business in the Kansas City area

and to pay a security deposit of $17,000. The rental amount was $19,900 per month.

The Rubble Hog was delivered to Kansas City in November, 1999. After having paid only one month's rent, the facts giving rise to the suit and countersuit arose. Getz filed a civil action (in Jackson County) against the Wattses alleging breach of contract and seeking declaratory relief, replevin and an injunction in a First Amended Petition filed February 9, 2000. Getz complains that the Wattses stopped paying the monthly $19,900 rent after the first month's payment and that they refused to surrender possession of the Rubble Hog.

The Wattses countersued for breach of contract, breach of implied warranty, breach of express warranty, breach of warranty of merchantability, negligent misrepresentation and misrepresentation on April 11, 2000. Generally they contend that the machine was totally useless for the purposes for which they intended to use it. Gary Watts further asserted that he was not a proper party because he did not sign the rental agreement.

Shortly after Getz filed its petition and before the Wattses filed their countersuit, Getz filed for a temporary restraining order (again in Jackson County) and an order of replevin seeking an immediate return of the Rubble Hog pending resolution of the underlying lawsuits. Getz alleged that its:

> right to possession and the need for an immediate temporary restraining order arise from (i) defendants [sic] ongoing use of the Rubble Hog, (ii) the failure of the defendants to furnish proof of insurance, (iii) the inability of Getz Recycle to monitor the use of the Rubble Hog, (iii)[sic] intentional destruction plaintiff's [sic] property by Gary Watts earlier during a fit of rage, and (iv) threats by Gary Watts

to damage the machine so it would never be usable again.

As a result of that motion and an accompanying show-cause hearing on why the court should not order an injunction and replevin, the parties stipulated that the Wattses would return the equipment and that Getz would obtain a replevin bond for $45,000 pending resolution of the suits. The stipulation was incorporated in the order of the circuit court, dated April 19, 2000, and disposed of the motion for a temporary restraining order and order of replevin. An affidavit by the attorney for the Wattses indicates that, prior to the show-cause hearing, he discussed with Getz's counsel the arbitration provision and that, instead of enforcing the terms, the attorneys elected to stipulate to the return of the Rubble Hog and bond pending resolution of the suits. At oral argument before this court, Getz stated that it chose to file a suit first and then invoke arbitration later in part because arbitrators do not always know that they can effect possession.

Less than a month after the above order was issued, Getz filed an application to stay the court proceedings and to enforce the arbitration clause of the rental agreement. Because the Wattses did not timely respond to that application, it was treated as an unopposed motion and sustained on June 20, 2000. The case was transferred to a new judge, who in January of 2001, after motion by the Wattses, set aside the earlier order for arbitration (without making any findings or conclusions) and then set the case for trial. Getz appeals, alleging that the arbitration clause has not been waived and effectively blocks this civil action.

## Standard of Review

■ In reviewing whether a motion to stay proceedings pending arbitration is ap-

propriate, the standard of review is essentially de novo, though "[c]ourts favor and encourage arbitration proceedings." *Metro Demolition and Excavating Co. v. H.B.D. Contracting, Inc.*, 37 S.W.3d 843, 846 (Mo.App.2001).

As noted more fully below, "[a]n arbitration clause is to be construed so as to favor arbitrability." *Hamilton Metals, Inc. v. Blue Valley Metal Prods. Co.*, 763 S.W.2d 225, 227 (Mo.App.1988). However, the determination of whether a party has waived its right to arbitrate is reviewed *de novo*. *McIntosh v. Tenet Health Sys. Hosps., Inc./Lutheran Med. Ctr.*, 48 S.W.3d 85, 89 (Mo.App.2001).

### Analysis

The parties do not contest that the arbitration clause in the equipment rental agreement is valid and enforceable under the Federal Arbitration Act.[1] Therefore, this court need address only: 1) whether the scope of the arbitration clause covers the claims and counterclaims, 2) whether Getz has waived its right to enforce the arbitration clause.

### I. Scope of Arbitration Clause

The arbitration clause in the rental agreement, set forth above, encompasses disputes over "the terms and/or conditions as set forth in the agreement." The Wattses contend that their countersuit for breach of contract, breach of implied warranty, breach of express warranty, breach

of warranty of merchantability, negligent misrepresentation and misrepresentation are not within the scope of the arbitration clause because that clause is narrowly drawn. Specifically, the Wattses argue that their claims do not relate to any term and/or condition of the agreement and thus that the dispute is not ripe for arbitration.

Appellant Getz, however, points to several "terms and/or conditions" in the arbitration agreement indicating that the dispute may fall into those categories. Noteworthy are the following two provisions:

> Lessee acknowledges that he has inspected said equipment at Lessor's yard, that said equipment is new and/or used equipment, and has satisfied himself that said equipment is in good working order, without defect except as otherwise noted hereon, and is satisfactory to perform the use intended by Lessee, and Lessee accepts said equipment "as is."

and

> LESSEE ACKNOWLEDGES THAT LESSOR MAKES NO EXPRESS OR IMPLIED WARRANTIES OF FITNESS, MERCHANTABILITY, OR OTHERWISE, AND THERE ARE NO AGREEMENTS, REPRESENTATIONS, PROMISES OR STATEMENTS OF ANY CHARACTER UNLESS EXPRESSLY SET FORTH ON THIS CONTRACT.

---

1. The court is required to examine its own jurisdiction *sua sponte*. *In re Marriage of Werths*, 33 S.W.3d 541, 542 (Mo. banc 2000). "A denial of a motion to stay proceedings pending arbitration [is not] appealable in Missouri" *VCW, Inc. v. Mutual Risk Mgmt. Ltd.*, 46 S.W.3d 118, 121 (Mo.App.2001) (citations omitted); § 435.440, RSMo.2000. However, the language of the rental contract and the fact that interstate commerce are at issue here indicate that appealability is governed by the Federal Arbitration Act, 9 U.S.C. § 16 and not Missouri's Uniform Arbitration Act. *See VCW*, 46 S.W.3d at 121 (appeal was proper where subject matter involved interstate commerce and involved FAA). Section 16(a)(1)(A) of the FAA states that "[a]n appeal may be taken from an order refusing a stay of any action under section 3 of this title." Because that is the action appealed from, this court has jurisdiction to hear the appeal.

A dispute must be arbitrated if there is a valid agreement to arbitrate and the dispute falls within the scope of that agreement. *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir.2001) (citations omitted). "An arbitration clause is to be construed so as to favor arbitrability and an order to arbitrate should not be denied unless it may be said with positive assurance that the arbitration clause does not cover the asserted dispute." *Hamilton Metals*, 763 S.W.2d at 227 (Mo.App.1988). Moreover, the Federal Arbitration Act "establishes that 'as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" *Lyster*, 239 F.3d at 945; *Moses H. Cone Memorial Hosp. v. Mercury Const.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

In this case, the counterclaims sounding in tort are not so clearly outside of the arbitration agreement that this court can hold the scope of the clause does not apply. This is particularly true given that appellant Getz, as lessor and drafter of the contract, included language (noted above) concerning merchantability and representations. Because of the strong presumption against finding that a dispute is outside the scope of an arbitration clause and because of the contractual language relating to merchantability and representations, this court holds that the claims and counterclaims are within the scope of the arbitration clause.

## II. Waiver of arbitration clause

Generally, a court must stay litigation if it determines that the parties agreed to arbitrate. *McIntosh*, 48 S.W.3d at 89. However, the right to arbitrate may be waived. *Id.* A party waives its right to arbitrate if it: 1) had knowledge of the existing right to arbitrate, 2) acted inconsistently with that right, and 3) prejudiced the party opposing arbitration. *Mueller*, 5 S.W.3d at 187. There is, however, a strong presumption against waiver. *Id.; Lyster*, 239 F.3d at 945 (as a matter of federal law, any doubts concerning an allegation of waiver should be resolved in favor of arbitrability).

In this case, there is no question that Getz had knowledge of its right to arbitrate, given that it drafted the agreement. There is also no question that Getz acted inconsistently with its right to arbitrate, given that it first initiated suit for breach of contract, replevin, etc. in Jackson County, Missouri. Nonetheless, a court cannot find waiver without first finding prejudice, and the burden of showing prejudice is on the party seeking waiver. *Mueller*, 5 S.W.3d at 187.

"Delay in seeking to compel arbitration does not itself constitute prejudice; but delay and the moving party's trial-oriented activity are material factors in assessing prejudice." *Id.* Prejudice may also result from "lost evidence, duplication of efforts, use of discovery methods unavailable in arbitration, or litigation of substantial issues going to the merits." *Nettleton v. Edward D. Jones & Co.*, 904 S.W.2d 409, 411 (Mo.App.1995). Prejudice can also be established where a party lost a motion on the merits and then attempted to invoke arbitration or where a party has postponed arbitration causing his adversary unnecessary delay or expense. *Mueller*, 5 S.W.3d at 187. "Prejudice is determined on a case-by-case basis." *Reis v. Peabody Coal Co.*, 935 S.W.2d 625, 631 (Mo.App.1996).

Apparently, no case in Missouri has dealt squarely with the issue of whether

the grant of injunctive relief or an attempt to replevin would result in a waiver of the right to arbitrate. Though not precisely on point, *Rath v. Network Marketing, L.C.*, 790 So.2d 461 (Fla.App.2001), illustrates the problems involved in returning the *res* of the lawsuit to a party by way of injunctive relief and then compelling arbitration. In *Rath,* a corporation filed a claim with the American Arbitration Association against a scientist and simultaneously in a trial court sought injunctive relief, including the return of clinical study documents allegedly commissioned by the corporation.

The *Rath* court explored the role of interim injunctive relief and its relation to waiver of arbitration disputes. It noted a split in the federal circuits. One set of courts reasons that the Federal Arbitration Act does not preclude lower courts from granting interim injunctive relief in an arbitrable dispute. The rationale under this theory is that the intent of the arbitration agreements would be frustrated if courts were precluded from issuing preliminary injunctive relief. Such relief preserves the status quo for arbitration. *Id.* at 461 (numerous citations omitted). *See also Johanson Resources Inc. v. La Vallee,* 271 A.D.2d 832, 835, 706 N.Y.S.2d 266 (N.Y.A.D.2000)("If the only relief sought .... had been replevin, we would agree that no waiver of the right to arbitration was effectuated .... since a party does not waive the right to arbitration" by merely moving for protective relief to preserve the status quo.).

Another theory is that, absent contractual language in the arbitration agreement providing for interim injunctive relief, such relief runs "counter to the 'unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction of the courts'" *Id.* at 465, 706 N.Y.S.2d 266 (numerous citations omitted). The effect un-

der this theory is that lower courts "may grant interim injunctive relief pending arbitration in order to preserve the status quo, but only if the parties' agreements contemplate such relief." *Id.; see also Merrill Lynch v. Hovey,* 726 F.2d 1286, 1292 (8th Cir.1984)(per plain meaning of AAA and clear congressional purpose, "where the Arbitration Act is applicable and qualifying contractual language has been alleged, the district court errs in granting injunctive relief.")

The *Rath* court resolved its dispute in part based on Florida precedent, noting that the parties did not reserved interim injunctive relief in the agreement to preserve the status quo and thus waived arbitration by seeking and obtaining substantial affirmative relief. *Rath* further noted that even if it did not follow precedent, it would have found waiver because the corporation's activity of compelling the scientific data "upset rather than preserved the status quo" in that the ownership was the subject of the dispute. *But cf. Jackson Trak Group, Inc. v. Mid States Port Authority,* 242 Kan. 683, 751 P.2d 122 (Kan. 1988)(no waiver of arbitration where party brought action for replevin and injunction because proceeding was limited to procedural issues, because application for injunction reserved the right to arbitrate damages, and because clause stated that no judicial proceeding "shall be deemed waiver" of right to arbitrate).

 Here, the four-month delay between the filing of the lawsuit and the application to stay the proceeding pending arbitration was not substantial. *See Mueller,* 5 S.W.3d 182, *Nettleton,* 904 S.W.2d at 411, *and McIntosh,* 48 S.W.3d at 90–91 (no waiver where period of seeking arbitration was less than one year after action commenced and where substantial amount of discovery already conducted was usable in arbitration); *Reis,* 935 S.W.2d at 631 (two-year delay and substantial pretrial activity

resulted in prejudice). Nonetheless, this court finds sufficient trial-oriented activity such that Getz has effectively waived its right to arbitrate. A $45,000 bond has been pending in the Circuit Court of Jackson County awaiting resolution of the case since April of 2000. Although ownership is not at issue, the subject matter of the dispute has been moved at the expense of the Wattses several hundred miles. Further, although bad faith is not an element in determining prejudice, the affidavit of the attorney for the Wattses is noteworthy in revealing that Getz led them to believe it would never invoke the arbitration clause. In short, by filing a first-amended petition in Missouri with the purpose of eventually invoking arbitration, Getz deprived the Wattses of the main goals of arbitration: speedy and low-cost dispute resolution. In effect, for the purpose of invoking arbitration, Getz misused the judicial process. *Reis*, 935 S.W.2d at 631. Even notwithstanding the affidavit, however, because substantial trial-oriented activity has occurred in the trial court establishing prejudice and because the clause of the arbitration agreement does not contain a provision for interim injunctive relief,[2] this court finds that Getz has waived its right to arbitrate.

This point is denied.

The judgment of the trial court is affirmed.

---

2. At oral arguments, Getz pointed to the third paragraph of the rental agreement regarding lessor's remedy to take possession of the Rubble Hog if the lessee defaults. However, Getz did not make an argument in his brief that that provision, which is wholly separate from the arbitration clause, reserves interim injunctive relief in anticipation of arbitration. It is thus not preserved for appellate review. Rule 84.04(d).

---

Moreover, Getz's argument concerning a provision in the parties' stipulation that jurisdiction was not waived is without merit. Getz fails to articulate how the reservation of a challenge to jurisdiction equates to a reservation of the right to invoke an arbitration clause late in the game. The court finds no merit in that argument.