**FRU–CON CONSTRUCTION COMPANY, Respondent,**

v.

**SOUTHWESTERN REDEVELOPMENT CORPORATION II, Appellant.**

No. 67724.

Missouri Court of Appeals, Eastern District, Division Two.

Aug. 15, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 25, 1995.

Application to Transfer Denied Nov. 21, 1995.

Timothy E. Hayes, Kent D. Kehr, Coburn & Croft, St. Louis, C. Wayne Primm, Southwestern Bell Tel. Co., St. Louis, for appellant.

Timothy R. Thornton, Greensfelder, Hemker & Gale, P.C., St. Louis, for respondent.

SMITH, Presiding Judge.

Defendant, Southwestern Redevelopment Corporation II, appeals from the denial by the trial court of its motion for stay of proceedings pending arbitration. The court denied the motion on the basis that the "claim" asserted by the plaintiff, Fru–Con Construction Co., against the defendant was not arbitrable under the contract of the parties. Finding that determination to be erroneous as to all but one portion of the cause of action we reverse.

Fru–Con as Contractor and Southwestern as Owner entered into a contract for the construction of the Southwestern Bell Data Center in the City of St. Louis. The total contract exceeded one hundred million dollars. The parties utilized a standard form contract supplied by the American Institute of Architects with amendments in some areas. Several provisions of that contract are pertinent to the issue on appeal.

§ 2.2.7 The Architect will be the interpreter of the requirements of the Contract Documents and the judge of the performance thereunder by both the Owner and Contractor.

§ 2.2.9 Claims, disputes and other matters in question between the Contractor and the Owner relating to the execution or progress of the Work or the interpretation of the Contract Documents shall be referred initially to the Architect for decision which he will render in writing within a reasonable time.

2.2.12 Any claim, dispute or other matter in question between the Contractor and the Owner referred to the Architect ... shall be subject to arbitration under Para-

graph 7.9 upon the written demand of either party. However, no demand for arbitration of any such claim, dispute or other matter may be made until the earlier of (1) the date on which the Architect has rendered a written decision, or (2) the tenth day after the parties have presented their evidence to the Architect or have been given a reasonable opportunity to do so, if the Architect has not rendered his written decision by that date . . .

7.9.1 All claims, disputes and other matters in question between the Contractor and the Owner arising out of, or relating to, the Contract Documents or the breach thereof . . . shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise . . .

7.9.3 Unless otherwise agreed in writing, the Contractor shall carry on the Work and maintain its progress during any arbitration proceedings, and the Owner shall continue to make payments to the Contractor in accordance with the Contract Documents.

By amendment the parties added to the first line of § 7.9 the following:

", if the total amount of damages arising from the claim or dispute, as estimated by the Architect, are less than $200,000. Any claim, dispute or other matter in question for which the amount of damages is estimated by the Architect to be greater than $200,000, is not subject to arbitration unless the parties mutually agree otherwise."

During the construction process, Contractor submitted Contractor Change Proposals (CCPs) to the architect. In October 1991 the contractor submitted CCP 297 to the architect. In that CCP Contractor stated that he relied on Owner's pre-bid representations for cooperation in a team concept and agreed to a "very aggressive" work schedule in reliance on those representations. Contractor alleged those representations were not true and then listed several situations of delay, misleading plans, and lack of cooperation commencing early in the project and continuing throughout the project. A not complete list of the situations covered included excava-

tion problems, dewatering problems, delays because of the condition of a building across the street not owned by Owner, difficulties with the Metrolink tunnel which went under the real estate, structural concrete formwork problems, and additional subcontracting costs. CCP 297 set an amount of $20,000,000 as the additional amount it was owed by the Owner for the construction of the Data Center from the combination of items contained in the CCP.

In August 1992 the Contractor filed suit claiming breach of contract, quantum meruit, and misrepresentation. Contractor made no request of the architect to evaluate CCP 297, which formed the basis for the lawsuit. In 1994, at the request of Owner, the architect submitted his evaluation of CCP 297 and found that it was comprised of multiple events giving rise to a series of different claims, only one of which exceeded $200,000 and therefore outside the arbitration requirement. In December 1994, Owner served on Contractor its demand for arbitration and filed its motion to stay proceedings. Following hearing the court denied the motion by written order on January 20, 1995. In its order the court found that the "total" amount of Contractor's "claim" exceeded $200,000 as the term "claim" is used in the contract and that the meaning of "claim" was not ambiguous. In defining what "claim" meant the court relied upon *Committee for Educational Equality v. State*, 878 S.W.2d 446 (Mo. banc 1994) [7, 8] wherein the court stated that "[C]laims are considered separate if they require proof of different facts and the application of distinguishable law, subject to the limitation that severing the claims does not run afoul of the doctrine forbidding the splitting of a cause of action." The court also expressed its concern that holding arbitration is required for all but one item comprising CCP 297 would involve splitting up of a cause of action, and would result in certain items being subject to arbitration while another part of the cause of action is litigated.

■■■ The parties agree that the Federal Arbitration Act applies. 9 U.S.C.A. Secs. 1–16. It carries with it a body of federal law governing arbitration and arbitrability. This court's review of the arbitrability of the con-

troversy is *de novo.*[1] *McMahan Securities Co. L.P. v. Forum Capital Markets L.P.*, 35 F.3d 82 (2nd Cir.1994) [2]. A court must stay litigation if it determines that the parties agreed to arbitrate. *Houlihan v. Offerman & Company, Incorporated*, 31 F.3d 692 (8th Cir.1994) [2]. The court evaluates: (1) whether the parties agreed to arbitrate; (2) the scope of the agreement; (3) if federal statutory claims are asserted, whether Congress intended those claims to be arbitrable; and (4) if the court concludes that some but not all claims are arbitrable, whether to stay the balance of the proceeding pending arbitration. *Genesco, Inc. v. T. Kakiuchi and Co., Ltd.*, 815 F.2d 840 (2nd Cir.1987) [1].

The United States Supreme Court in recent years has consistently taken a strong position in support of arbitration. In *Moses H. Cone Memorial Hospital v. Mercury Construction Corporation*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) [S.Ct. 12, 13], the court stated:

> The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

■ In that case the Court also addressed the concerns of piecemeal resolution of a dispute. While acknowledging the misfortune of having to resolve related disputes in different forums the court stated that such misfortune "occurs because the relevant federal law **requires** piecemeal resolution when necessary to give effect to an arbitration agreement". *Id.* at [9] (Emphasis in original). *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) [S.Ct. 1] also holds that maintenance of separate proceedings in different forums is not a consideration in determining arbitrability.

■ In *Genesco, supra* at [6] the Court stated the applicable standard as to arbitrability to be:

> The federal policy favoring arbitration requires us to construe arbitration clauses as broadly as possible. "[D]oubts as to arbitrability should be 'resolved in favor of coverage,' ... language excluding certain disputes from arbitration must be 'clear and unambiguous' or 'unmistakably clear' and ... arbitration should be ordered 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" (quoting from *S.A. Mineracao da Trindade–Samitri v. Utah Int'l, Inc.*, 745 F.2d 190, 194 (2d Cir.1984) (quoting *Wire Service Guild v. United Press Int'l*, 623 F.2d 257, 260 (2d Cir.1980) (quoting *International Ass'n of Machinists and Aerospace Workers, AFL–CIO v. General Electric Co.*, 406 F.2d 1046, 1048 (2d Cir.1969)))).

Similar statements are found in *McMahan, supra* at [6] and *Boogher v. Stifel, Nicolaus & Co.*, 825 S.W.2d 27 (Mo.App.1992) [5, 6]. Ambiguities as to the scope of the arbitration are resolved in favor of arbitration. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, — U.S. ——, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995) [S.Ct. 4]. Arbitrability is to be determined on an issue-by-issue basis, without regard to the way that the issues are grouped into claims. *Summer Rain v. The Donning Company/Publishers, Incorporated*, 964 F.2d 1455 (4th Cir.1992) [4].

■ We are unable to conclude that the contract here is so free from ambiguity that denial of arbitrability is proper. The parties have vested with the architect the obligation to determine initially "claims, disputes and other matters in question". Claims plural indicates the parties' belief that more than one claim would be involved. The arbitration provision requires that "All claims, disputes, and other matters in question" between the

---

1. Contractor contends that the trial court made a finding of fact of the meaning of claim in the contract, thereby requiring review under the clearly erroneous standard. We do not find that to be a correct analysis. The court interpreted the meaning of a word in the contract between the parties and determined whether it was ambiguous. That is a conclusion of law which we review *de novo*. *Parker v. Pulitzer Publishing Company*, 882 S.W.2d 245 (Mo.App.1994) [10, 11].

parties be arbitrated. The contract provides that the contractor continue work during arbitration and that the owner continue making payments, indicating that resolution of claims would not be held up until the completion of the project. Further the contract provides that "Any claim for extension of time be made in writing to the Architect not more than twenty days after the commencement of the delay; otherwise it shall be waived". Much of CCP 297 involves contentions that actions of the owner or architect or others justified additional extensions of time. The amendment to the arbitration provision establishing the $200,000 floor refers singularly to claim or dispute and places on the architect the obligation to determine the total amount of damages arising from the claim or dispute. "Total amount of damages" can very well contemplate different types or items of damage arising from a single dispute, as for example extra expense to the contractor, extra payments to a sub-contractor, and damages arising from violations of the time limitations in the contract because a specific action did not occur at a specific time.

The architect has determined here that CCP 297 is an accumulation of claims encompassing different phases of the work only one of which exceeds the contract floor and is therefore not subject to arbitration. While the contractor's petition alleges that all of its cause of action is premised upon bad plans and poor supervision and administration, the various items which make up CCP 297 are each fact intensive and require application of different legal concepts. For instance, the delay occurring because of the city refusing to allow pile driving until the owners of the Arcade Building nearby made certain safety changes to that building presents substantially different legal and factual issues than delay arising from the presence of buried concrete foundations on the premises and contractor's contention the pre-bid specifications insufficiently alerted the Contractor to their presence. We are unable to conclude that the strong presumption in favor of arbitration can be overcome by combining a series of claims into one grand claim tied together by amorphous generalized allegations of bad plans and poor supervision and administration.

An ambiguity exists when there is more than one reasonable interpretation which can be gleaned from the language of the contract. *Parker v. Pulitzer Publishing Company, supra*. Here it is reasonable that claim as used in the arbitration provision encompassed each single incident or issue for which a claim of damage was made. That was the architect's interpretation. That the contract allows an amalgamation to defeat arbitration is, at best, one of two reasonable interpretations of the contract, creating an ambiguity which must be resolved in favor of arbitration. Contractor also disputes the architect's role in evaluating claims before a party seeks arbitration. It claims it should not have to entrust its "ticket to the Court House" to the Owner's agent. It relies upon *Steinberg v. Fleischer*, 706 S.W.2d 901 (Mo. App.1986) to support this contention. The simple answer, of course, is that Contractor agreed to the architect's role. The architect in *Steinberg* was also an owner and party plaintiff to the litigation and the court refused to uphold the architect's role as "impartial judge" when he had direct monetary stake in the outcome of the project. The record does not demonstrate any such interest here. The parties agreed to the architect's status and they are bound by that agreement.

Contractor contends that the Owner waived its rights to arbitration by participating in the litigation proceedings including "extensive discovery". There is a presumption against finding a waiver of a right to arbitrate a claim. *Walker v. J.C. Bradford & Co.*, 938 F.2d 575 (5th Cir.1991) [4]; *McCarney v. Nearing, Staats, Prelogar and Jones*, 866 S.W.2d 881 (Mo.App.1993) [20–25]; *Boogher, supra* at [8–10]. Any doubts regarding waiver are interpreted in favor of arbitration. *Moses H. Cone, supra* at [13]; *Boogher, supra; Nettleton v. Edward D. Jones & Co.*, 904 S.W.2d 409, 411 (Mo.App. E.D.1995).

To establish waiver the Contractor must establish that (1) Owner knew of an existing right to arbitration; (2) Owner acted

inconsistently with that right; and (3) Owner's inconsistent acts prejudiced Contractor. *Stifel, Nicolaus & Company, Incorporated v. Freeman,* 924 F.2d 157 (8th Cir.1991) [2]. Because Contractor did not request architect's evaluation of CCP 297 it is difficult to find that Owner acted inconsistently in waiting until it had secured the architect's evaluation. That aside, the record does not establish prejudice. Contractor asserts it has been prejudiced but does not identify that prejudice.

The issue of whether the one claim which Owner and architect acknowledge is subject to litigation should be stayed pending arbitration is a matter for the discretion of the trial court on remand. *Genesco, supra* at [21, 22].

The order denying the request to stay is reversed, and the cause is remanded with instructions to stay proceedings as to all matters in litigation which the architect has found not to encompass damages in excess of $200,000.

PUDLOWSKI and WHITE, JJ., concur.