**Carl T. REIS, et al., Respondent,**

v.

**PEABODY COAL COMPANY, et al., Appellant.**

No. 70003.

Missouri Court of Appeals, Eastern District, Division Four.

Oct. 8, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 18, 1996.

Application to Transfer Denied Jan. 21, 1997.

W. Stanley Walch, Michael D. O'Keefe, Lawrence C. Friedman, St. Louis, for appellant.

George Allen Barton, Scott K. Martinson, Kansas City, Robert F. Ritter, St. Louis, for respondent.

RHODES RUSSELL, Presiding Judge.

Appellant, Peabody Coal Company ("Peabody"), appeals the trial court's order denying its motion to compel arbitration and stay litigation under a 1963 lease agreement with respondent, Green River Mine Trust ("GRMT"). Peabody also appeals the trial court's denial of its dismissal and summary judgment motions, and an order requiring production of an alleged privileged document.

GRMT claims that this court does not have jurisdiction to hear Peabody's appeals, or alternatively, Peabody waived its right to arbitration. We find that we have jurisdiction over the appeal of the denial of the motion to compel arbitration. We further find that Peabody waived its right to arbitrate, and therefore, affirm the trial court's order denying arbitration. Peabody's other appeals are dismissed for lack of appellate jurisdiction.

In November 1963, C.A. Reis and Annie Reis (Reis) entered into a lease agreement with Sentry Royalty Company (Sentry). Under the terms of the lease agreement, Sentry agreed to pay royalties to Reis for coal mining rights located in Kentucky. In exchange for the right to mine the coal, Sentry agreed to pay Reis "four percent on the monthly gross sales realization." Sentry also agreed to pay Reis a higher royalty rate if Sentry paid any coal owners of adjoining lands a higher rate. Any question under the lease agreement was to be resolved by arbitration.[1]

In January 1966, Reis assigned their rights under the lease agreement to GRMT. Sentry's rights and obligations under the lease agreement were eventually assumed by Peabody. Between 1979 and 1990, Peabody mined and sold coal from the leased premises. During this period, GRMT alleged that Peabody underpaid the mining royalties by fraudulently excluding certain taxes from the calculation of the gross sales realization. GRMT also alleged that Peabody failed to increase GRMT's royalty rate when Peabody paid adjoining land owners a higher rate for their coal.

In an effort to resolve the dispute, GRMT invoked the lease agreement's arbitration clause. Before an appointed arbitration panel, GRMT pled breach of contract and fraud. GRMT sought punitive damages for Peabody's alleged fraudulent conduct. Peabody objected to GRMT's request for punitive damages on the ground that the lease agreement did not authorize punitive damages. The arbitration panel later determined that it lacked authority to hear GRMT's fraud and punitive damage claims.

After the arbitration panel dismissed GRMT's fraud and punitive damage claims, the panel found that Peabody breached the lease by deducting taxes from the gross realization figures and by failing to pay GRMT royalties at the same rate Peabody had agreed to pay another royalty holder. The arbitration panel awarded GRMT $708,721.32 in damages. GRMT filed a confirmation proceeding in the District Court for the Eastern District of Missouri and a judgment was entered on the arbitration award.

Following the confirmation of its arbitration award, GRMT filed suit in the Circuit Court of the City of St. Louis against Peabody on the fraud and punitive damage claims. Peabody responded to GRMT's petition by moving to dismiss or, in the alternative, for summary judgment. Peabody argued that since GRMT arbitrated its contract claims, GRMT was barred by the doctrine of res judicata from litigating the fraud claims. The trial court denied Peabody's motions and Peabody appealed. In April 1994, this court,

1. The arbitration clause of the lease agreement provided the following: "If there is any question under this Lease arising between Lessors and Lessee which is not settled by negotiation, before the bringing of any suit or legal action in connection with same, then as a condition precedent to the bringing of such suit or legal action every such question shall be determined by arbitration...."

by order, dismissed the appeal for lack of appellate jurisdiction.

During the course of discovery, GRMT moved to compel the production of certain documents from Peabody. The trial court sustained GRMT's motion to compel certain documents over Peabody's objection that the documents were protected by the attorney-client privilege. Following the trial court's order to compel production of documents, Peabody renewed its motion for summary judgment. The trial court again denied Peabody's renewed motion for summary judgment.

Peabody next filed a motion to compel arbitration and stay litigation pursuant to the Federal Arbitration Act ("FAA") and the Missouri Arbitration Act (Missouri Act). In January 1996, the trial court denied Peabody's motion to compel arbitration.

In the appeal before us, Peabody contends that the trial court erred by: (1) denying its application to compel arbitration; (2) denying its motion for summary judgment; (3) denying its motion to dismiss; and (4) compelling production of an alleged privileged document. By a separate motion to dismiss, GRMT contends that we lack jurisdiction to hear this appeal.

## I. JURISDICTION OVER MOTION TO COMPEL ARBITRATION

■ In its motion to dismiss Peabody's appeal, GRMT contends that this court lacks jurisdiction to hear an appeal from a trial court's order denying a motion to compel arbitration and stay litigation. GRMT argues that although § 435.440.1(1) RSMo 1994 [2], provides for an interlocutory appeal from a trial court's order denying an application to compel arbitration, § 435.445 prohibits an appeal for agreements entered into before the statute's enactment date of 1980.

■ Peabody appeals under both the FAA and the Missouri Act. When a party has the right to appeal a trial court's order denying its motion to compel arbitration under either the FAA or the Missouri Act, it may do so if either statute applies to the circumstances of

its case. *Duggan v. Zip Mail Servs.*, 920 S.W.2d 200, 202 (Mo.App.1996).

The FAA permits an appeal from an order refusing a stay of litigation or an order denying a petition to order arbitration. 9 U.S.C. § 16(a)(1)(A) and (B) (Supp.1995). Likewise, the Missouri Act provides for an appeal from an order denying an application to compel arbitration, but it does not provide for an appeal from an order refusing to stay litigation. § 435.440.

Since both statutes permit an appeal, we must determine if either statute applies to the 1963 lease agreement. The FAA applies to contracts evidencing transactions "involving commerce." 9 U.S.C. § 2 (1970). The United States Supreme Court has held that the term "involving commerce" is the functional equivalent of "affecting commerce." *Allied–Bruce Terminix Cos. v. Dobson*, —— U.S. ——, ——, 115 S.Ct. 834, 839, 130 L.Ed.2d 753 (1995). The Court held that Congress intended the FAA to reach the full breadth of the Commerce Clause. *Id.*

■ Interstate commerce is involved where the U.S. Postal System is used, the parties are from different states, or where materials are transported across state lines. *Woermann Constr. Co. v. Southwestern Bell Tel. Co.*, 846 S.W.2d 790, 792–93 (Mo.App. 1993).

GRMT's lease agreement with Peabody involved interstate commerce in that the coal mined by Peabody crossed state lines. The arbitration panel concluded that the coal mining lease agreement affected commerce and it was subject to the FAA. We agree.

By applying the Missouri Act, the 1963 arbitration agreement would be unenforceable because the Missouri Act applies to agreements entered into after the statute's effective date of August 13, 1980. § 435.445; *Hefele v. Catanzaro*, 727 S.W.2d 475, 476 (Mo.App.1987). Prior to the enactment of the Missouri Act, Missouri courts did not enforce agreements to arbitrate. *Id.* 727 S.W.2d at 477. Today, however, arbitration agreements are valid and enforceable. § 435.350. In fact, arbitration is encouraged

**2.** All citations are to the 1994 Revised Statutes of Missouri unless otherwise indicated.

under Missouri law. *Greenwood v. Sherfield,* 895 S.W.2d 169, 173 (Mo.App.1995).

In *Bunge Corp. v. Perryville Feed & Produce, Inc.,* 685 S.W.2d 837, 839 (Mo. banc 1985), it was held that under the supremacy clause, Missouri courts are obliged to apply federal law and may not apply substantive or procedural state law which is in derogation of federal law.

■■■ The FAA preempts any state act when both acts are applicable. *Southland Corp. v. Keating,* 465 U.S. 1, 15–16, 104 S.Ct. 852, 860–61, 79 L.Ed.2d 1 (1984). Although the FAA creates substantive rights to be enforced in state courts, Missouri courts are not bound by the procedural provisions of the FAA, provided Missouri's procedures do not defeat the rights granted by Congress. *McClellan v. Barrath Constr. Co.,* 725 S.W.2d 656, 658 (Mo.App.1987).

■ The Missouri Act imposes an additional burden on a party seeking arbitration that the FAA does not. An arbitration agreement involving commerce entered into before August 13, 1980, would be enforceable under the FAA, while it would not under the Missouri Act. § 435.445. Applying § 435.445 to defeat arbitration where the FAA allows it would violate the supremacy clause of the United States Constitution. *Duggan,* 920 S.W.2d at 203. We may not use the Missouri Act to defeat a contract's arbitration clause which is covered by the FAA. *Bunge,* 685 S.W.2d at 839.

Applying § 435.445 in this case would not only deny Peabody's right to appeal, but would also defeat the enforceability of the arbitration agreement itself. If, however, this case had been filed in federal district court pursuant to the FAA, the arbitration agreement undoubtedly would have been enforceable. Thus, applying the Missouri Act would defeat the substantive rights of Peabody.

We find that the application of the Missouri Act is preempted by the FAA and find we have jurisdiction over Peabody's appeal.

GRMT's motion to dismiss this appeal is denied.

## II. WAIVER OF RIGHT TO ARBITRATE

■ In its second point on appeal, Peabody contends that the trial court erred in denying its motion to compel arbitration on the fraud and punitive damages claim and stay the circuit court litigation. Peabody argues that the arbitration clause of the lease agreement covers GRMT's claims. GRMT does not deny that the arbitration clause covers its claims; instead, GRMT contends that Peabody waived its right to arbitrate.[3]

■■■ Missouri courts recognize that parties can waive their right to arbitration. *Fru–Con Constr. Co. v. Southwestern Redevelopment Corp. II,* 908 S.W.2d 741, 745 (Mo. App.1995). We review waiver of arbitration rights de novo. *Nettleton v. Edward D. Jones & Co.,* 904 S.W.2d 409, 411 (Mo.App. 1995). In order to establish that a party has waived its right to arbitration, the opposing party must show that (1) the party knew of its existing right to arbitrate; (2) the party acted inconsistently with its right to arbitrate; and (3) the party's inconsistent acts prejudiced the opponent. *Fru–Con,* 908 S.W.2d at 746. There is, however, a presumption against finding a waiver and any doubts must be resolved in favor of arbitration. *McCarney v. Nearing, Staats, Prelogar & Jones,* 866 S.W.2d 881, 890 (Mo.App. 1993). Whether a party has waived its right to arbitrate is determined on a case-by-case basis. *Id.* at 890.

Applying the three-factor test reveals that Peabody waived its right to arbitrate. Peabody's knowledge of its right to arbitrate was demonstrated by its previous arbitration of GRMT's breach of contract claim before the arbitration panel. In addition, Peabody argued to the arbitration panel that punitive damages were not arbitrable.

The second prong of the waiver test requires a finding that Peabody acted inconsistently with its right to arbitrate. Peabody

**3.** The issue of whether the arbitration clause encompasses GRMT's claims is not before us and we do not express an opinion thereon.

acted inconsistently with its right to arbitrate in two significant ways. First, when Peabody had the opportunity to arbitrate the fraud and punitive damage claims in front of the original arbitration panel, it argued that the arbitration agreement did not authorize punitive damages. It was two years after GRMT filed suit in the circuit court that Peabody first asserted that GRMT's claims were covered by the arbitration clause. Second, Peabody's delay for nearly two years before requesting arbitration and its pretrial maneuvering were inconsistent with its right to arbitrate.

GRMT filed suit in August 1993. In November 1993, Peabody responded by moving for dismissal or summary judgment. The trial court denied Peabody's motion. In May 1995, Peabody renewed its motion for summary judgment and once again the trial court denied it. It was not until November 1995, that Peabody moved the trial court to compel arbitration. Nowhere up to that point did Peabody mention or request arbitration.

This case is similar to *St. Mary's Medical Center, Inc. v. Disco Aluminum Products Co.*, 969 F.2d 585 (7th Cir.1992). Therein, the U.S. Court of Appeals found that the defendant waived its right to arbitrate when it waited nearly eight months to demand arbitration after it had moved for summary judgment. *See also, Weight Watchers of Quebec, Ltd. v. Weight Watchers International, Inc.*, 398 F.Supp. 1057 (E.D.N.Y.1975) (defendant's motion for summary judgment and failure to mention or request arbitration for two years constituted waiver). Here, Peabody waited approximately two years to request arbitration and did so after its motions for summary judgment were denied and after it was required to produce allegedly privileged documents. We find that Peabody acted inconsistently with its right to arbitrate.

■ The third waiver requirement is that GRMT must have been prejudiced by Peabody's inconsistent acts. Without showing prejudice, one cannot establish waiver of the right to arbitrate. *McCarney*, 866 S.W.2d at 891. Prejudice is determined on a case-by-case basis. *Id.* at 890.

■ Lost evidence, duplication of efforts, use of discovery methods unavailable in arbitration, or litigation of substantial issues may constitute prejudice. *Stifel, Nicolaus & Co. v. Freeman*, 924 F.2d 157, 159 (8th Cir. 1991). Although delay in requesting arbitration by itself does not constitute prejudice, "delay and the moving party's trial-oriented activity are material factors in assessing prejudice." *Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 817 F.2d 250, 252 (4th Cir.1987).

■ Prejudice can also result when a party loses a motion on the merits and then attempts to invoke arbitration, or when a party postpones invoking arbitration, causing "his adversary to incur unnecessary delay or expense." *Kramer v. Hammond*, 943 F.2d 176, 179 (2nd Cir.1991).

Applying these factors, we conclude GRMT was prejudiced by Peabody's two year delay in seeking arbitration. Additional expense was incurred by GRMT in responding to Peabody's repeated motions for summary judgment and dismissal and prior premature appeal to us on those issues. A two year delay in which a party neither asserts its right to arbitrate in its answer nor in its other motions is significant.

Unlike other cases in which a party merely delays seeking arbitration, Peabody misused the judicial process to GRMT's detriment. *See Boogher v. Stifel, Nicolaus & Co.*, 825 S.W.2d 27, 30 (Mo.App.1992). It was not until Peabody had unsuccessfully exhausted its pretrial maneuvers, that it attempted to invoke arbitration.

Peabody contends that the presumption against waiver dictates that this court compel arbitration. Peabody, however, overlooks the fact that the parties have been deprived of arbitration's main purpose: efficient and low-cost resolution of disputes. One court has stated that:

> To permit litigants to exercise their contractual rights to arbitrate at such a late date, after they have deliberately chosen to participate in costly and extended litigation would defeat the purpose of arbitration: that disputes be resolved with dispatch and with minimum expense.

*Com-Tech Assoc. v. Computer Assoc. Int'l, Inc.,* 938 F.2d 1574, 1578 (2nd Cir.1991).

Additionally significant, is that Peabody initially argued that the arbitration clause did not authorize punitive damages. In its brief to this court, Peabody now argues to the contrary. This factor, coupled with the fact that Peabody did not demand arbitration until its motions for summary judgment and dismissal were denied, leads this court to conclude that Peabody waived its right to arbitrate. Point two is denied.

## III. JURISDICTION OVER PENDENT CLAIMS

In its third, fourth, and fifth points, Peabody urges this court to exercise "pendent appellate jurisdiction" over the trial court's order denying its motions for summary judgment or dismissal, and the order compelling production of an alleged privileged document.

Peabody does not cite any Missouri case that recognizes pendent appellate jurisdiction, nor does our research reveal any case. Instead, Peabody cites federal decisions that recognize where an interlocutory order is appealable, the federal court may exercise pendent appellate jurisdiction over issues "inextricably intertwined with a properly reviewable claim." *Kincade v. City of Blue Springs,* 64 F.3d 389, 394 (8th Cir.1995), *cert. denied, City of Blue Springs v. Kincade,* — U.S. —, 116 S.Ct. 1565, 134 L.Ed.2d 665 (1996).

Under Missouri law, however, the right to appeal is purely statutory and an appeal is only appropriate from a final judgment. *Schott v. Beussink,* 913 S.W.2d 106, 107 (Mo.App.1995); § 512.020 RSMo. This court has no power to hear an appeal unless a statute confers the right. Rule 81.01.

A final judgment is only appealable when it disposes of all issues relating to the parties and leaves nothing for future determination. *Sutton v. Goldenberg,* 862 S.W.2d 515, 516 (Mo.App.1993). An exception to the "finality rule" exists for cases involving multiple claims or multiple parties if the trial court certifies that there is "no just reason for delay." Rule 74.01(b). Because no Missouri statute provides for pendent appellate jurisdiction nor does any Missouri case recognize the concept, we look to Missouri law to determine whether the trial court's orders are appealable.

The denial of either a motion to dismiss or a motion for summary judgment is not a final judgment and is not reviewable. *Reben v. Wilson,* 861 S.W.2d 171, 175 (Mo. App.1993). A trial court order denying a party's motion for summary judgment is not reviewable, even when the appeal is taken from the final judgment in the case. *State ex rel. Missouri Div. of Transp. v. Sure–Way Transp.,* 884 S.W.2d 349, 351 (Mo.App.1994). We conclude that we lack appellate jurisdiction over the trial court's order denying Peabody's motion to dismiss or for summary judgment.

Peabody alleges that the trial court erred in ordering the production of a document referred to as the "Young Memorandum." The trial court's order compelling production of the "Young Memorandum" is not a final judgment as that order did not dispose of all the issues. The fraud and punitive damage claims remained for the trial court's later determination. Because the order compelling production is not a final judgment and was not certified under Rule 74.01(b), this appeal must wait until all the issues are disposed of to become a final judgment. *Gaa v. Edwards,* 626 S.W.2d 685 (Mo.App.1981).

The order denying Peabody's motion to compel arbitration and stay litigation is affirmed. The order denying dismissal and summary judgment and the order compelling document production are dismissed for lack of appellate jurisdiction.