**Phillip McINTOSH,**
**Plaintiff/Respondent,**

v.

**TENET HEALTH SYSTEMS HOSPITALS, INC./LUTHERAN MEDICAL CENTER, et al., Defendants/Appellants.**

**No. ED 78062.**

Missouri Court of Appeals,
Eastern District,
Division Three.

June 12, 2001.

Jonathan S. Harbuck, Birmingham, AL, Susan Herold, St. Louis, MO, for appellant.

James M. Martin, St. Louis, MO, for respondent.

LAWRENCE G. CRAHAN, Judge.

Appellant Tenet Health Systems Hospitals, Inc. ("Tenet") appeals the order denying its motion to stay respondent Phillip McIntosh's lawsuit pending arbitration. Tenet argues the trial court erred in concluding it waived its right to arbitrate. We reverse and remand.

Phillip McIntosh worked as a drug counselor for the C–Star program, a substance abuse treatment program operated by Lutheran Medical Center and owned by Tenet Health Systems Hospitals, Inc. At the beginning of his employment, McIntosh was issued an employee handbook containing a copy of Tenet's "Open Door Policy and Fair Treatment Process." Tenet, through its Open Door Policy, "encourage[d] its employees to openly express their problems, concerns and opinions on any issue related to their employment." Tenet established the Fair Treatment Process ("FTP") as a "comprehensive mechanism for resolving employment-related disputes" in instances where the Open Door Policy failed to do so. Tenet described the FTP as a "multi-step process that ultimately provides for final and binding arbitration of employment-related disputes."[1] As a condition of employment, McIntosh acknowledged receipt of the employee handbook by signing an "Employee Acknowledgement Form" stating, in part, that:

[I] acknowledge that I have received a copy of the Tenet Fair Treatment Process brochure. I hereby voluntarily agree to use the Company's Fair Treatment Process and to submit to final and binding arbitration any and all claims and disputes that are related in any way to my employment or the termination of my employment with Tenet. I understand that final and binding arbitration will be the sole and exclusive remedy for any such claim or dispute against Tenet … and that, by agreeing to use arbitration to resolve my dispute, both the Company and I agree to forego any right we each may have had to a jury trial on issues covered by the Fair Treatment Process I also agree that such arbitration will be conducted before an experienced arbitrator chosen by me and the Company, and will be conducted under the Federal Arbitration Act and the procedural rules of the American Arbitration Association ("AAA").

In November 1996, Tenet informed McIntosh that patients under his care had complained of "unprofessional conduct." Tenet suspended his employment. Later that month, McIntosh received a letter advising him of his termination.

The parties dispute the events following McIntosh's discharge. Correspondence between the parties reveals McIntosh, in December 1996, requested a "name clearing hearing" to resolve the claims of unprofessional conduct. Tenet denied the request stating McIntosh was required to follow the grievance procedures set forth under the FTP. In January 1997, Tenet forwarded McIntosh further information on the FTP and advised him to proceed through the initial steps of the process. McIntosh denies receiving this information. McIntosh further contends he attempted to file a complaint with Tenet

---

1. The FTP initially requires employees to submit grievances to Tenet. Final and binding arbitration is reached only if the dispute cannot be resolved internally.

pursuant to the FTP but was "rejected [and] not provided with any appropriate forms."

Tenet denies any wrongdoing. Tenet states it attempted to mail McIntosh a package of materials relating to the FTP one week after his discharge, but he had moved and provided no forwarding address. Tenet further disputes any claim that it frustrated McIntosh's attempts to file a grievance under the FTP.

In March 1998, sixteen months following his termination, McIntosh sued Tenet for wrongful termination and breach of contract. McIntosh further requested the trial court to compel arbitration, or in the alternative, to promptly hear all issues on the matter. Tenet, in May 1998, agreed to arbitrate McIntosh's claim. In July 1999, McIntosh filed a demand for arbitration with the American Arbitration Association. The hearing was set for March 2000.

At the same time, McIntosh's lawsuit proceeded toward trial. Tenet moved to stay the proceedings pending arbitration. McIntosh, however, withdrew from arbitration "because of the long delay in establishing the arbitration process." In his response to Tenet's motion, McIntosh argued Tenet's actions following his discharge constituted a waiver of its right to arbitrate. McIntosh cited Tenet's failure to provide a "meaningful grievance process . . . resulting in the filing of [his] lawsuit."

The trial court denied Tenet's motion to stay pending arbitration, concluding Tenet "waived its right to arbitration and that a stay of the present action, given the history and obstacles to Tenet's grievance process, would only frustrate the goals of efficient, expedient dispute resolution." Tenet's appeal followed.[2]

■ Our review is controlled by the Federal Arbitration Act ("FAA"), 9 U.S.C. section 1 *et seq.* 2000, which is applicable to both state and federal courts. *Boogher v. Stifel, Nicolaus & Co.*, 825 S.W.2d 27, 29 (Mo.App.1992) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). The FAA establishes a "federal policy favoring arbitration." *Berhorst v. J.L. Mason of Mo., Inc.*, 764 S.W.2d 659, 662 (Mo.App.1988).

■ The FAA applies to contracts evidencing transactions "involving commerce." 9 U.S.C. section 2; *Mueller v. Hopkins & Howard, P.C.*, 5 S.W.3d 182, 185 (Mo.App.1999). The United States Supreme Court has held that the term "involving commerce" is the functional equivalent of "affecting commerce." *Reis v. Peabody Coal Co.*, 935 S.W.2d 625, 629 (Mo.App.1996) (quoting *Allied–Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 265–66, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995)). Federal courts have interpreted the phrase broadly, applying the FAA in cases where the contract simply relates to interstate commerce even when the relationship was less than substantial. *Mueller*, 5 S.W.3d at 185.

■ The record establishes Tenet, through its C–Star program, treats out-of-state patients, receives goods and services from out-of-state vendors, and receives reimbursement from out-of-state and multistate insurers. McIntosh's employment as a drug counselor facilitated and affected Tenet's business activities. This tangential affect on interstate commerce subjects the arbitration agreement to the FAA. *See Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 835–37 (8th Cir.1997); *Crawford*

---

2. McIntosh did not file a respondent's brief in this appeal.

*v. West Jersey Health Sys.,* 847 F.Supp. 1232, 1240 (D.N.J.1994).[3]

On appeal, Tenet asserts the trial court erred in determining it waived its right to arbitrate under the FAA. We agree.

■ Under both the FAA and Missouri law, a written agreement to submit a present or future dispute to arbitration is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract. 9 U.S.C. section 2; *McCarney v. Nearing, Staats, Prelogar & Jones,* 866 S.W.2d 881, 887 (Mo.App.1993). Under the FAA, ordinary contract principles govern whether parties have agreed to arbitrate. *Patterson,* 113 F.3d at 834.

■ As discussed above, Tenet's FTP was set forth in its employee handbook. Under Missouri law, employee handbooks generally are not considered contracts because they normally lack the traditional prerequisites of a contract. *Id.* at 835. McIntosh's signed employee acknowledgement form, however, contained an arbitration clause in which McIntosh "voluntarily agree[d] to use [Tenet's] Fair Treatment Process and to submit to final and binding arbitration any and all claims and disputes that are related in any way to ... the termination of my employment with Tenet." In exchange for McIntosh's agreement to arbitrate, Tenet agreed "to submit all claims and disputes it may have with [McIntosh] to ... arbitration." We conclude this arbitration clause contemplates a mutual agreement between the parties to submit to the terms of the FTP and thus constitutes an enforceable contract. *See id.* at 834–35 (similar arbitration clause within employee handbook held to constitute separate and enforceable contract under Missouri law).

■ Generally, a court must stay litigation if it determines that the parties agreed to arbitrate. *Fru–Con Constr. Co. v. Southwestern Redevelopment Corp. II,* 908 S.W.2d 741, 744 (Mo.App.1995). But the right to arbitrate under the FAA may be waived. *Mueller,* 5 S.W.3d at 187. The question of what constitutes a waiver of the right to arbitrate depends on the facts of each case. *Berhorst,* 764 S.W.2d at 662. A party waives its right to arbitrate if it (1) had knowledge of the existing right to arbitrate, (2) acted inconsistently with that right, and (3) prejudiced the party opposing arbitration. *Id.* There is, however, a strong presumption against any such waiver. *Id.* Any doubts as to whether a party has waived its right to arbitrate must be resolved in favor of arbitration. *Id.* We review the question of waiver de novo. *Reis,* 935 S.W.2d at 630.

■ In the present appeal, Tenet undoubtedly knew of its existing right to arbitrate. Thus, to establish waiver, McIntosh must show Tenet acted inconsistently with its right to arbitrate and that he was prejudiced by Tenet's inconsistent acts. *Berhorst,* 764 S.W.2d at 662. McIntosh has failed to demonstrate either.

As detailed above, McIntosh, in his petition, requested that the trial court compel arbitration, or in the alternative, promptly hear all issues on the matter. Shortly thereafter, Tenet agreed to arbitrate McIntosh's dispute and moved to stay the trial court proceedings pending arbitration. McIntosh later withdrew from arbitration as his lawsuit approached trial. In his response to Tenet's motion, McIntosh asserted Tenet's actions following his dismissal constituted a waiver of its right to arbitrate.

---

**3.** Jurisdiction over Tenet's appeal is proper under 9 U.S.C. section 16(a)(1)(A) which permits an appeal from an order refusing a stay of arbitration. *Reis,* 935 S.W.2d at 629.

■ "Waiver results from a party's 'substant[ial] participat[ion] in litigation to a point inconsistent with an intent to arbitrate' which results in prejudice to the other party." *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000) (quoting *Morewitz v. West England Ship Owners Mut. Protection and Indem. Ass'n*, 62 F.3d 1356, 1366 (11th Cir.1995)). Tenet's actions before the trial court were mainly confined to its motion to stay the proceedings pending arbitration. We find this motion consistent with Tenet's intent to arbitrate under the FTP. *Cf. Stifel, Nicolaus & Co. v. Freeman*, 924 F.2d 157, 158 (8th Cir.1991) (finding plaintiff acted inconsistently with its right to arbitrate by instigating litigation and participating in discovery on arbitrable claims); *Reis*, 935 S.W.2d at 630–31 (finding party's two year delay before requesting arbitration and its pretrial maneuvering inconsistent with its right to arbitrate).

■ The trial court further concluded McIntosh "was clearly prejudiced by the delays caused by the failure of Tenet to make available its alternative forum for dispute resolution." Delay in seeking to compel arbitration does not itself constitute prejudice. *Freeman*, 924 F.2d at 159. In *Mueller*, 5 S.W.3d at 185, an employee sued his former employer. Employer answered the complaint and after extensive written discovery, moved to dismiss on the grounds that the employee's employment agreement provided that disputes would be settled through arbitration. *Id.* at 185–187. The trial court denied the motion. *Id.* at 185. On appeal, employee argued employer waived its right to arbitrate when it delayed seeking arbitration. *Id.* at 187–88. Employee urged he was prejudiced as he responded to interrogatories, produced a substantial number of documents, researched and responded to employer's affirmative defenses, and incurred substantial legal fees prior to employer's motion to dismiss. *Id.* This court reversed the trial court's judgment, holding employee did not satisfy his burden to establish prejudice "despite the fact that a delay occurred." *Id.* at 188. We concluded employer's delay of nearly seven months in moving to dismiss after employee's suit did not prejudice employee. *Id.* Our holding in *Mueller* is consistent with prior authority finding delay in seeking to compel arbitration insufficient to establish prejudice. *See generally Freeman*, 924 F.2d at 158–59 (moving party's use of judicial process and discovery before demanding arbitration not prejudicial to opponent as no issues litigated and limited discovery unusable in arbitration); *Nettleton v. Edward D. Jones & Co.*, 904 S.W.2d 409, 410–12 (Mo. App.1995) (limited discovery and legal expenses incurred by party opposing arbitration insufficient to establish prejudice); *Berhorst*, 764 S.W.2d at 662–64 (holding party did not waive right to arbitrate despite moving to dismiss and moving for summary judgment on opponent's claim).

Prejudice, however, may result from delay and a moving party's trial-oriented activity. *Reis*, 935 S.W.2d at 631. In *Reis*, 935 S.W.2d at 630–31, this court held the plaintiff established prejudice as a result of defendant's two year delay in seeking arbitration where plaintiff responded to repeated motions for summary judgment and dismissal as well as a premature appeal on those issues. "A two year delay in which a party neither asserts its right to arbitrate in its answer nor in its other motions is significant." *Id.* at 631.

Here, Tenet agreed to arbitrate two months after McIntosh filed suit. In its answer to McIntosh's petition, Tenet requested a stay of the proceedings pending arbitration. Unlike the defendant in *Reis*, Tenet did not avail itself of the legal process prior to demanding arbitration. It

 

was not until McIntosh withdrew from arbitration that additional litigation ensued. Under such circumstances, McIntosh failed to overcome the strong presumption against waiver and the trial court erred in denying Tenet's motion to stay pending arbitration. The order is reversed and the cause remanded for proceedings consistent with this opinion.

GARY M. GAERTNER, SR., P.J., concurs.

GEORGE W. DRAPER III, J., concurs.