ROY L. RICHTER, Presiding Judge
Defendants Napleton's Mid-Rivers Motors, Inc. d/b/a Napleton's Mid-Rivers Chrysler Dodge Jeep Ram, Ted Hantek, Frank Shaffer and Tim Dodson (collectively, "Defendants") appeal from the trial court's denial of their motion seeking to compel arbitration in a lawsuit filed by plaintiff Corey Ellington ("Plaintiff") against Defendants for an alleged violation of Missouri's service letter statute, Section 290.140, et seq. We reverse and remand.
I. Background
Plaintiff was employed by Defendant Napleton's Mid-Rivers Motors, Inc. d/b/a Napleton's Mid-Rivers Chrysler Dodge Jeep Ram ("Napleton's") from October 6, 2014, to August 4, 2016. On October 6, 2014, the beginning of Plaintiff's employment, Plaintiff and Napleton Mid Rivers Imports, Inc. d/b/a Napleton's Mid Rivers Kia ("Napleton Kia") entered into a Mutual Agreement to Arbitrate Employment Claims ("Arbitration Agreement"). Napleton Kia and Napleton's are affiliates of the Napleton Automotive Group.
The Arbitration Agreement states, in pertinent part:
Any controversy, claim or dispute between Employee and Dealership (including, any present or former employee, agent, officer, director, parent, subsidiary, affiliate, successor, or assign of Napleton ), arising out of Employee's employment or termination of employment, must be resolved only through binding arbitration. This includes, but is not limited to, any claims or violations arising under.... federal, state, or local statutes or ordinances , and/or any claim of unjust or tortious discharge or any claim of fraud, negligence, personal injury, or intentional or negligent infliction of emotional distress as to which [Plaintiff] otherwise would have the right to pursue litigation including the right to a trial by jury .
(emphasis added).
The Arbitration Agreement also states, "[t]his Agreement to arbitrate disputes survives the termination of Employee's employment with Napleton ." (emphasis added). It expressly covers "[a]ny controversy, claim or dispute between [Plaintiff] and [Napleton Kia] as well as its affiliate[s], (which would include Napleton's)" "arising out of [Plaintiff's] employment or termination of employment." Additionally, just above Plaintiff's signature on the Arbitration Agreement is the following in bold, capitalized letters: "THIS CONTRACT CONTAINS A BINDING ARBITRATION
*75 PROVISION WHICH MAY BE ENFORCED BY THE PARTIES WHICH I HAVE READ, UNDERSTAND AND AGREE ."
After Plaintiff was terminated on August 4, 2016, he requested in writing a Missouri service letter, by letter sent certified U.S. Mail and via email, dated September 12, 2016. He referenced the Missouri service letter statute, Section 290.140, RSMo. The letter was delivered and signed for by Defendant Shaffer on September 15, 2016. Defendant failed to respond to Plaintiff's service letter within the 45 days as required by the Missouri service letter statute until May 23, 2017, more than eight months after the service letter was received.
On or around November 8, 2016, Plaintiff filed a Charge of Discrimination with the Missouri Commission on Human Rights ("MCHR") and the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of his race and retaliation against Defendants Napleton Mid-Rivers Chrysler Dodge Jeep Ram, Napleton Mid-Rivers Kia, Napleton Mid-Rivers Honda, Frank Shaffer, Ted Hantek, and Tim Dodson. On August 25, 2017, Plaintiff filed his Petition for Damages in the Circuit Court of St. Charles County, alleging race discrimination and retaliation in violation of the Missouri Human Rights Act ("MHRA") (Counts I and II) and violation of Missouri's service letter statute, Section 290.140, et seq. (Count III)[1] , arising from his employment with Napleton's and the alleged discrimination by two former employees of Napleton's Mid Rivers Imports, Defendants Hantek and Dodson.
Defendants moved to dismiss this action, or, in the alternative, to stay proceedings and compel arbitration based on the terms of the Arbitration Agreement. Plaintiff filed his opposition to Defendants' motion, arguing that the Arbitration Agreement lacks consideration and mutuality of obligation, and is unconscionable. Regarding the service letter statute claim, Plaintiff asserted:
The arbitration agreement ended when Plaintiff was no longer employed. The violation of the service letter statute is not arbitrable under the Disputed Agreement. Therefore, if arbitration is compelled, this case will be litigated in piece-meal fashion, which is not preferred.
In Defendants' reply, they stated that the plain language of the Arbitration Agreement establishes that the Arbitration Agreement survives Plaintiff's termination and that Plaintiff's service letter claim falls squarely within the scope of the claims covered by the Arbitration Agreement, in that the Arbitration Agreement includes any controversy, claim, or dispute between Plaintiff and Napleton's "arising out of Employee's employment, or termination of employment."
On January 18, 2018, the trial court entered an order granting Defendant's Motion to Compel as to Counts I and II
*76 and denying Defendant's Motion to Compel regarding the service letter statute claim in Count III. The trial court found that the "arbitration Provision is not unconscionable and that the cause of action in Counts I and II fall within the scope of the Arbitration Agreement." In denying the motion to compel arbitration regarding the service letter statute claim, the trial court also found that Count III of Plaintiff's Petition "deals with issues which would arise after employment had been terminated. The service letter statute was not referenced in the Arbitration Provision."
This appeal follows.[2]
I. Discussion
In their sole point on appeal, Defendants allege the trial court erred in denying Defendants' motion to dismiss, or, in the alternative, to stay proceedings and compel arbitration as to Count III because Plaintiff's service letter claim falls within the scope of the Arbitration Agreement in that it is a claim arising out of Plaintiff's termination from employment based upon an alleged violation of a state statute and because the Arbitration Agreement survives the termination of Plaintiff's employment. In response, Plaintiff claims the trial court's judgment denying Defendants' motion to compel arbitration must be affirmed because the disputed arbitration agreement is not a valid and enforceable contract as to a claim that Defendants committed certain acts after the termination of the employment relationship. We agree with Defendants.
Initially, we note that both the United States Congress and the Missouri General Assembly have enacted arbitration legislation. Edward D. Jones & Co. v. Schwartz, 969 S.W.2d 788, 793 (Mo. App. W.D. 1998). The Federal Arbitration Act ("FAA") is found at 9 U.S.C. § 1, et seq. (1970), and the Missouri Arbitration Act ("Missouri Act") appears at § 435.350 et seq. Both express the liberal policy of enforcing arbitration agreements as a matter of law "to further the important public policy of resolving disputes without resort to the courts." Schwartz, 969 S.W.2d at 793 ; Dunn Indus. Group, Inc. v. City of Sugar Creek, 112 S.W.3d 421, 427 (Mo. banc 2003). Whereas arbitration is an alternative to litigation, judicial oversight of arbitration is narrow and strictly limited. CPK/Kupper Parker Communications, Inc. v. HGL/L. Gail Hart, 51 S.W.3d 881, 883 (Mo. App. E.D. 2001) ; Western Waterproofing Co., Inc. v. Lindenwood Colleges, 662 S.W.2d 288, 291 (Mo. App. E.D. 1983). Both the federal and state acts also express that a written agreement to submit a present or future dispute to arbitration is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract. McIntosh v. Tenet Health Sys. Hosp., Inc., 48 S.W.3d 85, 89 (Mo. App. E.D. 2001). It is a firmly established principle that parties can be compelled to arbitrate against their will only pursuant to an agreement whereby they have agreed to arbitrate claims. Morrow v. Hallmark Cards, Inc., 273 S.W.3d 15, 21 (Mo. App. W.D. 2008).
As a general rule, an arbitration clause contained in a contract is enforceable under the FAA, which preempts any contrary Missouri statute. Sturgeon v. Allied Prof'ls Ins. Co., 344 S.W.3d 205, 212 (Mo. App. E.D. 2011). Under conventional application of the supremacy clause and rules of statutory construction, the FAA, a federal statute, preempts the Missouri Act, a state statute, insofar as it contravenes the FAA. See id. Thus, under the supremacy *77 clause, we are obliged to apply federal law when reviewing an action under the FAA. Boogher v. Stifel Nicolaus & Co., Inc., 825 S.W.2d 27, 29 (Mo. App. E.D. 1992). Although the FAA creates substantive rights to be enforced in state courts, our courts are not bound by the procedural provisions of the FAA and state procedural rules may be applied when arbitration is pursuant to the FAA. Duggan v. Zip Mail Services, Inc., 920 S.W.2d 200 (Mo. App. E.D. 1996). The FAA provides:
If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement....
9 U.S.C. § 3. Section 4 of the FAA also empowers the court to compel arbitration when one party has failed or refused to comply with the arbitration agreement. 9 U.S.C. § 4.
The appellate court's review of a denial of a motion to compel arbitration is de novo. Dunn Indus. Group, Inc. v. City of Sugar Creek, 112 S.W.3d 421, 428 (Mo. banc 2003). The party seeking to compel arbitration has the burden of proving the existence of a valid and enforceable arbitration agreement. Jimenez v. Cintas Corp., 475 S.W.3d 679, 683 (Mo. App. E.D. 2015). Once it is determined that a valid arbitration agreement exists, to compel arbitration, a party must also show that the dispute is covered by the arbitration agreement. Frye v. Speedway Chevrolet Cadillac, 321 S.W.3d 429, 434 (Mo App. W.D. 2010) (citing Nitro Distrib., Inc. v. Dunn, 194 S.W.3d 339, 345 (Mo. banc 2016) ). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration...." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ; Am. Exp. Co. v. Italian Colors Rest., 570 U.S. 228, 233, 133 S.Ct. 2304, 186 L.Ed.2d 417 (2013) (courts must "rigorously enforce" arbitration agreements to their terms); see CompuCredit Corp. v. Greenwood, 565 U.S. 95, 98, 132 S.Ct. 665, 181 L.Ed.2d 586 (2012) (FAA establishes a liberal policy favoring arbitration and requires that courts enforce arbitration agreements according to their terms).
"In making these determinations, the court should apply the usual rules of state contract law and cannons of contract interpretation." Nitro Distrib., Inc., 194 S.W.3d at 345. The elements required to form a valid contract in Missouri are "offer, acceptance, and bargained for consideration." Johnson v. McDonnell Douglas Corp., 745 S.W.2d 661, 662 (Mo. banc 1988). As the party asserting the existence of a valid and enforceable contract to arbitrate, Defendants "bear the burden of proving that proposition." U.S. Bank v. Lewis, 326 S.W.3d 491, 495 (Mo. App. S.D. 2010).
If the trial court's ruling on a motion to compel arbitration includes factual findings which bear on these factors, then the factual findings will be affirmed if they are supported by substantial evidence, and are not against the weight of the evidence. Manfredi v. Blue Cross and Blue Shield of Kansas City, 340 S.W.3d 126, 130 (Mo. App. W.D. 2011). "However, issues relating to the existence of an arbitration agreement are factual and require [ ] deference to the trial court's findings." Katz v. Anheuser-Busch, Inc., 347 S.W.3d 533, 539 (Mo. App. E.D. 2011).
*78 Here, the trial court found that the Arbitration Agreement is a valid and enforceable contract, which is a factual finding requiring this Court to give deference. The trial court concluded that Plaintiff's Missouri service letter statute claim was not covered by the Arbitration Agreement. The trial court reasoned that the service letter claim did not fall within the scope of the Arbitration Agreement because (1) the service letter claim relates to issues arising after Plaintiff's employment ended and (2) the Arbitration Agreement did not identify the Missouri service letter statute as an arbitrable claim.
Rather than argue that the trial court was incorrect in its reasoning for finding the service letter did not fall within the scope of the Arbitration Agreement, Plaintiff argues that Defendants seeking to compel arbitration have not met their burden of proving the existence of a validly formed contract because of insufficient consideration.
In Missouri, however, consideration is created by "either a promise (to do or refrain from doing something) or the transfer or giving up of something of value to the other party." Morrow, 273 S.W.3d at 25. Plaintiff argues that employment at-will fails as consideration in an arbitration agreement under Jimenez v. Cintas Corp., 475 S.W.3d 679 (Mo. App. E.D. 2015). Plaintiff also contends no mutuality of obligation is found here between Plaintiff and Defendants as Plaintiff has no duty or obligation under the law to Defendants after the termination of his employment, and no consideration can survive Plaintiff's termination.
However, as Defendants point out, Plaintiff does not dispute that there was consideration for the Arbitration Agreement, only contesting a portion of the Arbitration Agreement on the claim regarding the service letter because it arose after Plaintiff's termination. Mutuality of obligation in an arbitration agreement failing to survive termination is not a principle of law cited by Plaintiff or by our Court. Rather, we find there was sufficient consideration to support the entire Arbitration Agreement. Both parties agreed that future disputes, including those "arising out of Employee's employment, or termination of employment," would be subject to binding arbitration. The Arbitration Agreement sets forth the mutual promises between the parties to arbitrate "any" claims that arose between them, which constitute consideration for the entire agreement, not just a portion of the agreement, and nothing suggests otherwise. Moreover, the Arbitration Agreement states again in paragraph four that "the Agreement to arbitrate disputes survives the termination of Employee's employment with [Defendant]." Accordingly, even though the service letter statute claim did not become actionable until after Plaintiff's employment ended, that does not diminish the mutual agreement to arbitrate claims that "arise out of Employee's employment, or termination of employment."
Now turning to the trial court's reasons for denying Defendants' motion to compel arbitration of Plaintiff's service letter statute claim, we are mindful of our standard which dictates that when it cannot be said "with positive assurance" that the parties have clearly and unequivocally excepted a certain dispute from arbitration, "[d]oubts should be resolved in favor of [arbitration]." Int'l Ass'n of Machinists & Aerospace Workers, Dist. Lodge No. 19 v. Soo Line R.R. Co., 850 F.2d 368, 381 (8th Cir. 1988) (en banc) (quoting AT & T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) ). Here, we do not find the parties have clearly and unequivocally excepted the service *79 letter statute dispute from arbitration at all, and thus, conclude the trial court erred in denying the motion to compel arbitration on that claim.
First, the trial court denied the motion to compel arbitration of the service letter statute claim based on the conclusion that the claim did not fall within the scope of the Arbitration Agreement. We disagree. As stated supra, the Arbitration Agreement expressly covers any controversy, claim or dispute between Plaintiff and Napleton's "arising out of Employee's employment, or termination of employment." The Arbitration Agreement provides that covered claims include
any claims or violations arising under.... federal, state, or local statutes or ordinances, and/or any claim of unjust or tortious discharge or any claim of fraud, negligence, personal injury, or intentional or negligent infliction of emotional distress as to which [Plaintiff] otherwise would have the right to pursue litigation including the right to a trial by jury.
Plaintiff's Missouri service letter statute claim arises under a state statute, Section 290.145, and relates to Plaintiff's employment and termination from employment. The statute reads:
Whenever any employee of any corporation during business in this state and which employs seven or more employees, who shall have been in the service of said corporation for a period of at least ninety days, shall be discharged or voluntarily quit the service of such corporation and who thereafter within a reasonable period of time, but not later than one year following the date the employee was discharged or voluntarily quit, requests in writing by certified mail to the superintendent, manager or registered agent of said corporation, with specific reference to the statute, it shall be the duty of the superintendent or manager of said corporation to issue to such employee, within forty-five days after the receipt of such request, a letter, duly signed by such superintendent or manager, setting forth the nature and character of service rendered by such employee to such corporation and the duration thereof, and truly stating for what cause, if any, such employee was discharged or voluntarily quit such service.
Section 290.140.1. Because Plaintiff was employed by Defendants for at least ninety days and then was terminated, Plaintiff was entitled to request in writing within a year of termination, a letter setting forth the nature and character of service rendered by Plaintiff to Defendants' corporation and the duration thereof, and the cause that Plaintiff was discharged, pursuant to the statute's requirements. Section 290.145.1. Plaintiff's Missouri service letter claim arises under his employment and termination. Plaintiff's Petition directly references the statutory language and states that "after Plaintiff was terminated, he requested in writing a Missouri Service Letter." This claim could not have occurred without Plaintiff's employment and termination, and accordingly, we find it falls within the scope of the Arbitration Agreement. The fact that the service letter statute claim did not become actionable until after Plaintiff's employment ended does not remove it from the scope of the Arbitration Agreement here.
Our court has long agreed with this conclusion. In Boogher v. Stifel Nicolaus & Co., 825 S.W.2d 27, 30 (Mo. App. E.D. 1992), this Court held that an employer's duty to supply a service letter, as well as the information required in such a letter, relates to a plaintiff's employment and termination and, thus, is within the scope of arbitration under the Arbitration Agreement.
*80 The Arbitration Agreement at issue here was identical to that in Boogher, providing that "[a]ny controversy ... arising out of the employment or termination of employment ... shall be settled by arbitration." Id. Just as we did in Boogher, we find that Plaintiff's service letter claim here arises out of his employment and termination of employment and must be settled by arbitration. We find the trial court's denial of the motion to compel arbitration of Plaintiff's Service Letter claim is clearly erroneous based on the plain language of the Arbitration Agreement.
Even after finding flaw in the trial court's first reason for denying the motion to compel, we further review the trial court's denial of the motion to compel arbitration on the service letter statute claim because the Arbitration Agreement did not specifically identify the Missouri service letter statute as an arbitrable claim. Like the first reason, we also disagree with this one.
Section 290.140 requires that the employee requesting a service letter give "specific reference to the statute," but the statute does not require that the Arbitration Agreement must also do so. There is no requirement that every statute which the parties intend to be covered by the Arbitration Agreement be specifically and expressly stated in the agreement. Moreover, the Arbitration Agreement clearly states that the parties agree to arbitrate the following:
Any controversy , claim or dispute ... arising out of Employee's employment, or termination of employment ... This includes, but is not limited to , any claims or violations arising under [specifically cited statutes] and/or any other federal, state, or local statutes or ordinances ...
(emphasis added). As discussed supra, the Boogher Court found that almost identical language mandated that a service letter claim be encompassed within the arbitration agreement:
The agreement between the plaintiff and defendant provides that '[A]ny controversy ... arising out of employment or termination of employment ... shall be settled by arbitration....' We conclude the duty to supply a service letter, as well as the information required in such letter, relates to plaintiff's employment and termination and is within the scope of arbitration agreed upon by the parties. Therefore, defendant's failure to issue a service letter to plaintiff is arbitrable.
825 S.W.2d at 30. As evident by the similarities between Boogher and this case, we see that the Missouri Human Rights Act and the service letter statute need not be specifically referenced to fall within the scope of the Arbitration Agreement, especially because the Arbitration Agreement uses all-encompassing language to include "any other federal, state or local statutes or ordinances...." Thus, we find the trial court's reasoning for denial of the motion to compel arbitration pursuant to the Arbitration Agreement was in error. Defendant's point on appeal is granted.
Section 435.355.4 requires that an action subject to arbitration "shall be stayed if an order for arbitration or an application therefor has been made under this section ..." Rather than dismissal, the proper course of action for the trial court, upon finding an agreement to arbitrate, is to stay the action pending arbitration." Hewitt v. St. Louis Rams P'ship, 409 S.W.3d 572, 574 (Mo App. E.D. 2013). Proceedings on Plaintiff's petition should therefore be stayed for arbitration.
III. Conclusion
The judgment of the trial court is reversed and remanded with directions that *81 the trial court compel arbitration and stay proceedings on Plaintiff's petition for damages.
Robert M. Clayton III, J., concurs.
Angela T. Quigless, J., concurs.

This statute dictates that employees of corporations doing business in Missouri and employing at least seven employees, who have served the corporation for at least 90 days and are discharged or voluntarily quit the service of the corporation, within a reasonable time up to a year after the date of discharge or voluntary quit, may request a service letter in writing by certified mail to the corporation, with reference to the statute. It is the corporation's duty to issue to the employee within 45 days after the receipt of such request, a signed letter setting forth the nature and character of service rendered by such employee to such corporation and the duration thereof, and truly stating for what cause, if any, such employee was discharged or voluntarily quit. The statute further provides for employer liability. Section 290.140.

Defendant Napleton's Mid-Rivers Motors, Inc. d/b/a Napleton's Mid-Rivers Chrysler Dodge Jeep Ram is the only defendant to Count III of the Petition.